**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

LEQUITA DENNARD, JOHN GULO,
TERRANCE LAVELA, KATHRYN A.
SEDLACEK, HENRY D. SCHMOLL, and
PHILIP A. KRAMER,

        Plaintiffs,

        vs.

AEGON USA LLC; TRANSAMERICA
FINANCIAL LIFE; INSURANCE
COMPANY; TRANSAMERICA
RETIREMENT SOLUTIONS
CORPORATION; KIRK BUESE; RALPH
ARNOLD; KEN
KLINGER; MARY TAIBER; DIANE
MEINERS; and DOES 1 through 10,
inclusive,

        Defendant(s).

No. 1:15-cv-00030-EJM

_____

**SECOND AMENDED CLASS ACTION COMPLAINT**

1.      Plaintiffs Lequita Dennard, John Gulo, Terrance LaVela, Kathryn A. Sedlacek,

Henry D. Schmoll, and Philip A. Kramer, individually and as a representative of a class of similarly

situated persons bring this action on behalf of the AEGON Companies Profit Sharing Plan (the

"Plan") against AEGON USA LLC ("AEGON"), Transamerica Financial Life Insurance Company,

Transamerica Retirement Solutions Corporation, and the trustees of the Plan including Kirk Buese,

Ralph Arnold, Ken Klinger, Mary Taiber, and Diane Meiners (collectively "Defendants").

## NATURE OF THE ACTION

2.      Fiduciaries for retirement plans owe the plan and its participants and beneficiaries

fiduciary duties described as among the "highest known to the law." *Braden v. Walmart Stores, Inc.*, 588

F.3d 585, 602 (8th Cir. 2009).

3.      When choosing investments for a retirement plan, plan fiduciaries are required to:

act prudently; perform with undivided loyalty; and defray reasonable plan expenses. ERISA

§ 404(a)(1), 29 U.S.C. 1104(a)(1).

4.      ERISA also prohibits certain transactions and arrangements that have a high

potential for abuse. Thus ERISA prohibits a fiduciary from causing a plan to transact with a party in

interest, such as the plan sponsor, and prohibits plan fiduciaries from causing plan transactions for

the benefit of themselves or others. ERISA § 406(a)-(b), 29 U.S.C. § 1106(a)-(b).

5.      Defendants have violated their fiduciary duties and engaged in multiple prohibited

transactions with Plan assets.

6.      Plaintiffs' First Claim for Relief alleges that the individual trustees of the Plan,

Defendants Buese, Arnold, Klinger, Taiber, Meiners, and other individuals who served as trustees

("Trustees") during the Relevant Period (February 6, 2009 to the present), were responsible for

choosing, evaluating, monitoring, and changing the investments in the Plan. Each of the Trustees

was an officer or manager with AEGON or one of its subsidiaries. Instead of acting for the

exclusive benefit of the Plan and its participants and beneficiaries with respect to managing the Plan's assets, the Trustees acted for the benefit of their employer, AEGON, forcing the Plan into many investment funds managed by AEGON affiliates. In 2013, for example, 94.4% of the Plan's assets, approximately $1.454 billion (not counting loans to participants and AEGON stock), were invested in AEGON-managed funds. AEGON has profited handsomely from these arrangements, earning millions of dollars in fees during the Relevant Period. Thus the Trustees' investment decisions breached their fiduciary duties under ERISA.

7.       Plaintiffs' Second Claim for Relief alleges that the Trustees' investment decisions caused multiple prohibited transactions during the Relevant Period. Each time the Plan paid fees to AEGON in connection with the Plan's investment in an AEGON-affiliated fund, the Trustees caused the Plan to engage in a prohibited transaction under ERISA. Specifically, each time the Plan paid fees to an AEGON-affiliated fund manager the Plan engaged in a transaction prohibited by ERISA § 406(a), which prohibits the Trustees from causing the Plan to transact with the plan sponsor, AEGON, or any of its affiliates and subsidiaries. Each time the Plan paid fees to an AEGON-affiliated fund manager, the Plan engaged in a transaction prohibited be ERISA § 406(b), which prohibits the Trustees from causing the Plan to engage in a transaction benefiting a person, here AEGON and its affiliates, whose interest are adverse to the Plan.

8.       This is a civil enforcement action under ERISA, and in particular under ERISA §§ 404, 406, 409, 502(a)(2), 29 U.S.C. §§ 1104, 1106, 1109, 1132(a)(2). Plaintiffs bring this action on behalf of the Plan for losses to the Plan and for disgorgement of unlawful fees, expenses, and profits taken by Defendants for the benefit of AEGON and themselves.

9.       This class action is brought on behalf of participants and their beneficiaries in the Plan who participated in the Plan from February 6, 2009 through the present (the "Relevant Period").

**JURISDICTION AND VENUE**

10.     This Court has exclusive jurisdiction over the subject matter of this action under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because it is an action under 29 U.S.C. § 1132(a)(2) and (a)(3).

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

12.     Venue is proper in this district pursuant to ERISA § 502(e)(2), because AEGON's principal place of business is located in this district.

**PARTIES**

13.     Plaintiff Lequita Dennard is a resident of Georgia. She is a participant in the Plan. Her account was invested in the Stable Value Fund during the Relevant Period.

14.     Plaintiff John Gulo is a resident of Illinois. He participated in the Plan during the Relevant Period. His account was invested in the in the Core Bond Fund, Stable Value Fund, Large Value Fund, and Mid Value Fund during the Relevant Period.

15.     Plaintiff Terrance LaVela is a resident of Illinois. He participated in the Plan during the Relevant Period. His account was invested in the Core Bond Fund, Stable Value Fund, Large Core Fund, and Large Growth Fund during the Relevant Period.

16.     Plaintiff Kathryn A. Sedlacek is a resident of Walford, Iowa. She participated in the Plan during the Relevant Period. Her account was invested in the Core Bond Fund, High Quality Bond Fund, Stock Index, Money Market Fund during the Relevant Period.

17.     Plaintiff Henry D. Schmoll is a resident of Marion, Iowa. He participated in the Plan during the Relevant Period. His account was invested in the Core Bond Fund, High-Yield Bond Fund, Large Core Fund, Large Growth Fund, Large Value Fund, Mid Value Fund, Small Core Fund, and Stock Index Fund during the Relevant Period.

4

18.    Plaintiff Philip A. Kramer is a resident of Urbana, Iowa. He participated in the Plan during the Relevant Period. His account was invested in the Core Bond Fund during the Relevant Period.

19.    Plaintiffs were not provided any information regarding the substance of deliberations, if any, of Defendants concerning the Plan's menu of investment options during the proposed class period. Plaintiffs otherwise had no knowledge of the substance of the deliberations, or of the nature of the investments she selected in the Plan beyond what was provided to them by the Plan. Plaintiffs discovered their claims shortly before commencing this action.

20.    AEGON USA, LLC ("AEGON") is a citizen of Iowa and a subsidiary of AEGON N.V., a multinational provider of insurance, and pension and asset management. AEGON also provides financial services including insurance, the management of retirement plans, and an array of investment options including retail mutual funds and unregistered investment products such as pooled separate accounts and collective trusts. AEGON is the plan sponsor, serves as the plan administrator, and through an affiliate is the record keeper for the Plan. Transamerica Asset Management, Transamerica Financial Life Insurance Company, and Diversified Retirement Corporation now rebranded as Transamerica Retirement Solutions are subsidiaries of AEGON that provide investment management and other services to the Plan. AEGON is a fiduciary for the Plan because it established and administers investments held by the Plan. AEGON is also a fiduciary for the Plan because, through its Board of Directors, it appoints, monitors, and removes the Trustees of the Plan.

21.    Transamerica Financial Life Insurance Company, in its own capacity or through one or more of its affiliates, is the manager of the pooled separate accounts in which the Plan invests and is the fiduciary for those separate accounts.

22.     Transamerica Retirement Solutions Corporation, and before that, Diversified Investment Advisors, both AEGON subsidiaries, managed the collective trust in which the Plan invests and acted as fiduciary for that collective trust.

23.     The Trustees of the Plan are appointed by AEGON's Board of Directors. The Trustees administer the Plan, select the investment options available under the Plan, and hire the service providers to the Plan. The Trustees are responsible for monitoring Plan investments and vendors and have discretion to add or remove investment options offered in the Plan. The following individuals served as Trustees during some or all of the Relevant Period:

- Kirk Buese is an Executive Vice President – Private and Structured Finance at AEGON USA Investment Management, a subsidiary of AEGON N.V.

- Ralph Arnold is the Chief Risk Officer and a Director at Transamerica Premier Life Insurance Company, a subsidiary of AEGON. He has been employed by AEGON, through subsidiaries and acquisitions, for more than 40 years.

- Ken Klinger is a vice president and actuary at Transamerica Life Insurance Company.

- Mary Taiber is Director, Employee Service Center at AEGON.

- Diane Meiners Vice President, Capital Reporting and Analysis at Transamerica Life Insurance Company.

24.     John and Jane Does 1-25. John and Jane Does 1-25 are persons unknown to Plaintiffs, including but not limited to persons serving as Trustees, who were fiduciaries or parties in interest to the Plan during the Relevant Period.

## DEFENDANTS' ERISA VIOLATING CONDUCT

### I.    The Plan

25.     The Plan is an "employee benefit pension plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).

26.     The Plan is a "defined contribution plan" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

27.     The Plan covers eligible employees of AEGON and other participating employers, some or all of which are affiliates of AEGON.

28.     As of the end of the 2013 plan year, the Plan had 16,715 combined participants and deceased participants with beneficiaries receiving benefits.

29.     The Plan held $1.56 billion in assets at the end of the 2013 plan year.

30.     During the Relevant Period, the Plan has invested in the following funds: Employer Stock of AEGON N.V.; AEGON affiliate Diversified Retirement Corporation's collective trust Stock Index Fund and Real Estate Fund; AEGON affiliate Transamerica Financial Life Insurance Company's pooled separate account Core Bond Fund; High Quality Bond Fund; High Yield Bond Fund; Intermediate Horizon Asset Allocation Fund; Intermediate/Long Horizon Asset Allocation Fund; International Equity Fund; Large Core Fund; Large Growth Fund; Large Value Fund; Long Horizon Asset Allocation Fund; Mid Value Fund; Short Horizon Asset Allocation Fund; Short/Intermediate Horizon Asset Allocation Fund; Small Core Fund; and a Stable Value Fund; unaffiliated mutual funds Columbia's Acorn Z; Oppenheimer's Developing Markets Y and Developing Markets N; and Vanguard's Inflation Protected Securities Institutional Class and Small Cap Index Institutional Class. The Plan also offers a brokerage window through Charles Schwab. For all of its affiliated investment options other than AEGON stock, which together constituted more than 85% of Plan assets at the end of the 2013 plan year, AEGON charged investment

7

management and other fees. The AEGON-affiliated funds at issue in this Complaint are: Stock Index Fund; Real Estate Fund; Core Bond Fund; High Quality Bond Fund; High Yield Bond Fund; Intermediate Horizon Asset Allocation Fund; Intermediate/Long Horizon Asset Allocation Fund; International Equity Fund; Large Core Fund; Large Growth Fund; Large Value Fund; Long Horizon Asset Allocation Fund; Mid Value Fund; Short Horizon Asset Allocation Fund; Short/Intermediate Horizon Asset Allocation Fund; Small Core Fund; and Stable Value Fund. ("Proprietary Funds").

31.     The Trustees of the Plan, all of whom are employees of AEGON, decide to add to, maintain, or delete from these investment funds. The Trustees meet periodically to make these decisions, including within the last six years. For example, the Horizon investment options were removed from the Plan in 2012.

## II.     The Plan Pays AEGON Millions of Dollars in Fees Annually.

32.     As of the end of the 2013 plan year, $684 million of Plan assets was invested among nine separate accounts managed by Transamerica Financial Life Insurance Company, another $414 million was invested in a AEGON Stable Value Fund, and another $225 million in the Stock Index Fund and Real Estate Fund, both collective trusts, managed by Diversified Retirement Corporation, an AEGON subsidiary.

33.     Pooled separate accounts and collective trusts are a non-registered products offered by, respectively, insurance companies and banks, and resemble mutual fund in that the assets of multiple investors are pooled to purchase securities, with differences in respect to the ownership structure of those investments.

34.     The Plan's separate accounts are not "managed" in furtherance of an investment strategy. AEGON affiliate Transamerica Financial Life Insurance Company, the advisor to these funds, is not picking stocks for the equity funds, or bonds for the bond funds. Instead, each separate account invests in an affiliated AEGON registered investment company, or in the case of the

8

Horizon separate accounts, several affiliated registered investment companies, corresponding to the separate account's investment strategy.

35.     At each registered investment company level, a subadvisor is hired to perform the actual portfolio management. The AEGON affiliated advisor to the registered investment company provides little or no services, but charges a substantial markup to the Plan on the subadvisor fee.

36.     In Table 1 below, Plaintiffs identify the AEGON fund, advisor, and subadvisor for each of the Plan's Proprietary Funds.

| Table 1 | | |
|---|---|---|
| Plan Investment | Advisor | Subadvisor |
| Stock Index Fund | DRC[1] | Multiple |
| Real Estate Fund | DRC | Multiple |
| Large Growth | TAM[2] | Wellington Management |
| Large Value | TAM | Aronson Johnson Ortiz |
| Core Bond | TAM | AEGON USA Investment Management LLC |
| International Equity | TAM | Thompson, Siegel & Walmsley |
| Small Core | TAM | Systematic Financial Management |
| Large Core | TAM | Aronson Johnson Ortiz |
| Mid Value | TAM | Thompson, Siegel & Walmsley |
| High Quality Bond | TAM | Merganser Capital Management |
| High Yield Bond | TAM | Eaton Vance Management |
| Long Horizon | TFLIC[3] | Multiple |
| Intermediate/Long Horizon | TFLIC | Multiple |
| Intermediate Horizon | TFLIC | Multiple |
| Short/Intermediate Horizon | TFLIC | Multiple |
| Short Horizon | TFLIC | Multiple |

[1] Diversified Retirement Corporation
[2] Transamerica Asset Management, Inc.
[3] Transamerica Financial Life Insurance Company

9

37.     Each of the subadvisors listed in Table 1 will contract directly with an institutional investor and manage a separate account for that investor. Defendants could have gone directly to the subadvisors for its portfolio management service rather than acting as a middleman and layering on added fees. In other words, the Plan could have obtained the identical portfolio management service and the identical portfolio performance (before fees) that it in fact received, but at much lower cost had the Trustees contracted directly with subadvisors rather than going through an AEGON intermediary and paying dearly for the privilege of doing so.

38.     For example, Aronson Johnson Ortiz, the subadvisor for the Large Value fund, publicly advertises investment management services for a large cap fund benchmarked against the Russell 1000 index, the same index benchmarked by the Plan's large value fund. Aronson Johnson Ortiz charges a management fee of 30 basis points on the first $250 million, decreased in three steps to 12.5 basis points on amounts over $1 billion.

39.     The Plan, though, pays a fee of 50 basis points, well in excess of the 30 basis points or less charged by Aronson Johnson Ortiz. Thus, the Plan pays a markup of 66% over the subadvisor's fee. That markup is paid to AEGON.

40.     The same arrangement of marked-up fees is present in all of the pooled separate accounts in which the Plan invested, as listed below in Table 2.

| Table 2 | | | |
|---|---|---|---|
| Plan Investment | Separate Account Fee | Maximum Subadvisor fee | Markup |
| Large Growth | .65% | .40% | 62.5% |
| Large Value | .50% | .30% | 66% |
| Core Bond | .40% | .12% | 233% |
| International Equity | .80% | .30% | 166% |

| Table 2 | | | |
|---|---|---|---|
| Plan Investment | Separate Account Fee | Maximum Subadvisor fee | Markup |
| Small Core | .85% | .425% | 100% |
| Large Core | .65% | .30% | 117% |
| Mid Value | .70% | .275% | 155% |
| High Quality Bond | .40% | .20% | 100% |
| High Yield Bond | .50% | .35% | 42% |
| Long Horizon | .29%* | Multiple | Varied |
| Intermediate/Long Horizon | .26%* | Multiple | Varied |
| Intermediate Horizon | .26%* | Multiple | Varied |
| Short/Intermediate Horizon | .26%* | Multiple | Varied |
| Short Horizon | .26%* | Multiple | Varied |

41.     These markups cost the Plan dearly. For example, these markups cost the Plan approximately $2 million in 2013 alone. AEGON collected the $2 million in middle-man fees. AEGON officers and employees made that happen.

42.     These tables do not account for the Diversified Collective Trust investments held by the Plan, totaling approximately $226 million at the end of 2013. The investment structure and fees of the Stock Index Fund are opaque and not disclosed to the Plan's participants. The Form 5500 financial report for the Diversified Collective Trust, EIN 04-6784256, Plan Number 001, reflects that the fund holds corporate stocks, corporate debt, U.S treasuries, interests in other collective trusts, interests in mutual funds, and "other" investments. Indeed, according to the Form 5500, approximately 80% of the Diversified Collective Trust is simply invested in other pooled investment

11

funds, mutual funds and collective trusts, managed by other investment managers who charge fees for managing those portfolios.

43. But the disclosures to Plan participants misrepresent the nature of the Stock Index Fund. A 2008 Summary Plan Description ("SPD") for the Plan describes the Stock Index Fund as follows: "The Stock Index Fund seeks high long-term return by matching the returns and volatility (risk) of the S&P 500 Equity Index." The more recent 2014 SPD says the same thing. But the Stock Index Fund is not, in fact, an S&P 500 Index Fund. An S&P 500 Index Fund invests in the stocks that make up the S&P 500 Index in proportion to the market capitalization of each company that makes up the index. The Stock Index Fund, however, invests in corporate debt, U.S treasuries, and "other" investments. The 2013 financial report for the Stock Index Fund reveals that approximately 17% of the fund was invested in corporate debt, U.S treasuries, and "other" investments. Plainly, those assets are not S&P 500 stocks.

44. The overwhelming concentration of Plan assets in Proprietary Funds is no accident. The Board of Directors of AEGON appoints the Trustees. The Board has only chosen senior AEGON officers and managers to serve as Trustees. Those Trustees serve their true master, AEGON, not the Plan, choosing to maintain over 90% of the Plan's assets in AEGON Proprietary Funds generating millions of dollars a year in fees for AEGON and its affiliates. In sum, the Trustees steered millions of dollars of fees to their employer rather than attempting to contract directly with the subadvisor investment managers who provide the core portfolio management service for each fund.

## ERISA FIDUCIARY STANDARDS AND PROHIBITED TRANSACTIONS

45. ERISA imposes strict fiduciary duties of loyalty and prudence upon the Defendants as fiduciaries of the Plan. ERISA § 404(a), 29 U.S.C.§ 1104(a), states, in relevant part, that:

> [A] Fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and —

(A)     For the exclusive purpose of

      (i)     Providing benefits to participants and their beneficiaries; and

      (ii)    Defraying reasonable expenses of administering the plan;

(B)     With the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims;

(C)     By diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D)     In accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV.

46.     ERISA also imposes explicit co-fiduciary duties on plan fiduciaries. ERISA § 405, 29 U.S.C. § 1105, states, in relevant part, that:

In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1)     If he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or

(2)     if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3)     If he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

47.     Under ERISA, fiduciaries that exercise discretionary authority or control over the selection of plan investments and the selection of plan service providers must act prudently and solely in the interest of participants in the plan when selecting investments and retaining service providers. Thus, "the duty to conduct an independent investigation into the merits of a particular investment" is "the most basic of ERISA's investment fiduciary duties." *In re Unisys Savings Plan Litig.*, 74 F.3d 420, 435 (3d Cir. 1996). As the Department of Labor explains,

13

> [T]o act prudently, a plan fiduciary must consider, among other factors, the availability, riskiness, and potential return of alternative investments for his or her plan. [Where an investment], if implemented, causes the Plan to forego other investment opportunities, such investments would not be prudent if they provided a plan with less return, in comparison to risk, than comparable investments available to the plan, or if they involved a greater risk to the security of plan assets than other investments offering a similar return.

DoL Ad. Op. No. 88-16A.

48.     Pursuant to these duties, fiduciaries must ensure that the services provided to the plan are necessary and that the fees are reasonable:

> Under section 404(a)(1) of ERISA, the responsible Plan fiduciaries must act prudently and solely in the interest of the Plan participants and beneficiaries both in deciding … which investment options to utilize or make available to Plan participants or beneficiaries. In this regard, the responsible Plan fiduciaries must assure that the compensation paid directly or indirectly by the Plan to [service providers] is reasonable . . . .

DoL Ad. Op. 97-15A; DoL Ad. Op. 97-16A

49.     A fiduciary's duty of loyalty requires a fiduciary to act solely in the interest of plan participants and beneficiaries. As the Department of Labor has repeatedly warned:

> We have construed the requirements that a fiduciary act solely in the interest of, and for the exclusive purpose of providing benefits to, participants and beneficiaries as prohibiting a fiduciary from subordinating the interests of participants and beneficiaries in their retirement income to unrelated objectives. Thus, in deciding whether and to what extent to invest in a particular investment, a fiduciary must ordinarily consider only factors relating to the interests of plan participants and beneficiaries in their retirement income. A decision to make an investment may not be influenced by [other] factors unless the investment, when judged solely on the basis of its economic value to the plan, would be equal or superior to alternative investments available to the plan.

DoL Ad. Op. No. 98-04A; DoL Ad. Op. No. 88-16A.

50.     The Department of Labor counsels that fiduciaries are responsible for ensuring that a plan pays reasonable fees and expenses and that fiduciaries need to carefully evaluate differences in fees and services between prospective service providers:

> While the law does not specify a permissible level of fees, it does require that fees charged to a plan be "reasonable." After careful evaluation during the initial

14

selection, the plan's fees and expenses should be monitored to determine whether they continue to be reasonable.

In comparing estimates from prospective service providers, ask which services are covered for the estimated fees and which are not. Some providers offer a number of services for one fee, sometimes referred to as a "bundled" services arrangement. Others charge separately for individual services. Compare all services to be provided with the total cost for each provider. Consider whether the estimate includes services you did not specify or want. Remember, all services have costs.

Some service providers may receive additional fees from investment vehicles, such as mutual funds, that may be offered under an employer's plan. For example, mutual funds often charge fees to pay brokers and other salespersons for promoting the fund and providing other services. There also may be sales and other related charges for investments offered by a service provider. Employers should ask prospective providers for a detailed explanation of all fees associated with their investment options.

Meeting Your Fiduciary Responsibilities (May 2004) (available at

http://www.dol.gov/ebsa/publications/fiduciaryresponsibility.html).

51.     In a separate publication, the Department of Labor writes:

Plan fees and expenses are important considerations for all types of retirement plans. As a plan fiduciary, you have an obligation under ERISA to prudently select and monitor plan investments, investment options made available to the plan's participants and beneficiaries, and the persons providing services to your plan. Understanding and evaluating plan fees and expenses associated with plan investments, investment options, and services are an important part of a fiduciary's responsibility. This responsibility is ongoing. After careful evaluation during the initial selection, you will want to monitor plan fees and expenses to determine whether they continue to be reasonable in light of the services provided.

* * *

By far the largest component of plan fees and expenses is associated with managing plan investments. Fees for investment management and other related services generally are assessed as a percentage of assets invested. Employers should pay attention to these fees. They are paid in the form of an indirect charge against the participant's account or the plan because they are deducted directly from investment returns. Net total return is the return after these fees have been deducted. For this reason, these fees, which are not specifically identified on statements of investments, may not be immediately apparent to employers.

Understanding Retirement Plan Fees and Expenses (May 2004) (available at

http://www.dol.gov/ebsa/publications/undrstndgrtrmnt.html.)

15

52.     ERISA prohibits certain transactions with plans involving parties in interest and fiduciaries because of their significant potential for and risk of abuse. Specifically, ERISA § 406 provides as follows:

(a) Transactions between plan and party in interest

Except as provided in section 1108 of this title:

(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

(A) Sale or exchange, or leasing, of any property between the plan and a party in interest;

(B) Lending of money or other extension of credit between the plan and a party in interest;

(C) Furnishing of goods, services, or facilities between the plan and a party in interest;

(D) Transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or

(E) Acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107 (a) of this title.

(2) No fiduciary who has authority or discretion to control or manage the assets of a plan shall permit the plan to hold any employer security or employer real property if he knows or should know that holding such security or real property violates section 1107 (a) of this title.

(b) Transactions between plan and fiduciary.

A fiduciary with respect to a plan shall not—

(1) Deal with the assets of the plan in his own interest or for his own account,

(2) In his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

(3) Receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

16

## CLASS ALLEGATIONS

53.     Plaintiffs bring this action on behalf of a class defined as:

> All participants in the AEGON Companies Profit Sharing Plan from February 6, 2009 to the present whose account was invested in an investment fund managed by an AEGON USA affiliate. Excluded from the class are Defendants, Defendants' beneficiaries, and Defendants' immediate families.

54.     Class certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(1), (b)(2), and/or (b)(3).

55.     The class satisfies the numerosity requirement because it is composed of thousands of persons, in numerous locations. The Plan had over 10,000 participants and beneficiaries in every year of the Relevant Period, all of whom invested in at least one of the AEGON Funds during the Relevant Period and all of whom suffered from the excessive plan administration fees charged by AEGON. The number of class members is so large that joinder of all its members is impracticable.

56.     Common questions of law and fact include:

- Whether Defendants were fiduciaries responsible for monitoring and making decisions with respect to the investments in the Plan and services for the Plan;

- Whether Defendants breached their fiduciary duties to the Plan by causing the Plan to invest its assets in AEGON Funds;

- Whether the investment and service-provider decisions made by Defendants were solely in the interests of Plan participants and beneficiaries of the Plan;

- Whether Defendants breached their fiduciary duty by failing to defray Plan expenses;

- Whether the Plan suffered losses as a result of Defendants' fiduciary breaches.

57.     Plaintiffs' claims are typical of the claims of the Class. They have no interests that are antagonistic to the claims of the Class. Plaintiffs understand that this matter cannot be settled without the Court's approval.

58.     Plaintiffs will fairly and adequately protect the interests of the Class. They are committed to the vigorous representation of the Class. Plaintiffs' counsel are experienced in class action and ERISA litigation.

59.     A class action is the superior method for the fair and efficient adjudication of this controversy. Joinder of all members of the Class is impracticable. The losses suffered by some of the individual members of the Class may be small, and it would therefore be impracticable for individual members to bear the expense and burden of individual litigation to enforce their rights. Moreover, Defendants, as fiduciaries of the Plan, were obligated to treat all Class members similarly as Plan participants pursuant to written plan documents and ERISA, which impose uniform standards of conduct on fiduciaries. Individual proceedings, therefore, would pose the risk of inconsistent adjudications. Plaintiffs are unaware of any difficulty in the management of this action as a class action.

60.     This Class may be certified under Rule 23(b).

- 23(b)(1). As an ERISA breach of fiduciary duty action, this action is a classic 23(b)(1) class action. Prosecution of separate actions by individual members would create the risk of (A) inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the Defendants opposing the Class, or (B) adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

- 23(b)(2). This action is suitable as a class action under 23(b)(2) because the Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final injunctive, declaratory or other appropriate equitable relief with respect to the Class.

- 23(b)(3). This action is suitable to proceed as a class action under 23(b)(3) because questions of law and fact common to the members of the Class predominate over individual questions, and this class action is superior to other available methods for the fair and efficient adjudication of this controversy. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiffs are aware of no difficulties likely to be encountered in the management of this matter as a class action.

## CLAIMS FOR RELIEF

## COUNT 1

**Breaches of the Duty in Maintaining Plan Investments and Defraying Reasonable Expenses**

61.     Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

62.     Defendants are bound by ERISA's duties of undivided loyalty and defraying Plan expenses.

63.     Defendants violated each of these duties with respect to the following proprietary investment products: the Stock Index Fund; Real Estate Fund; Core Bond Fund; High Quality Bond Fund; High Yield Bond Fund; Intermediate Horizon Asset Allocation Fund; Intermediate/Long Horizon Asset Allocation Fund; International Equity Fund; Large Core Fund; Large Growth Fund; Large Value Fund; Long Horizon Asset Allocation Fund; Mid Value Fund; Short Horizon Asset Allocation Fund; Short/Intermediate Horizon Asset Allocation Fund; Small Core Fund; and Stable Value Fund.

64.     They violated these duties by causing the Plan to invest in AEGON Proprietary Funds that charged substantial middle-man fees when the Plan could have contracted directly with the subadvisors for the core portfolio management service. By failing to contract directly with the fund's subadvisors, Defendants caused the Plan to pay AEGON millions of dollars in fees annually that the Plan would otherwise not have paid. Defendants therefore breached their fiduciary duties under 29 U.S.C. § 1104(a)(1)(A), which required Defendants to administer the Plan with the exclusive purpose of providing benefits and defraying reasonable plan expenses.

65.     As a direct and proximate result of these breaches, the Plan and class members paid millions of dollars in the form of excess fees which were collected by AEGON.

66.     Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2) and 29 U.S.C.§ 1109(a), Defendants are liable to disgorge all fees received from the Plan, directly or indirectly, and profits thereon, and restore all losses suffered by the Plan caused by their breaches of the duty.

## COUNT II

### Prohibited Transactions in Connection with the Assessment of Fees

67.     Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

68.     As Plan sponsor, AEGON and its subsidiaries are parties in interest.

69.     AEGON is a fiduciary to the Plan.

70.     The AEGON subsidiaries and affiliates that manage the AEGON Proprietary Funds are fiduciaries under ERISA because they exercise discretion over Plan assets in those funds.

71.     AEGON and its subsidiaries and affiliates that manage the AEGON Proprietary Funds engage in prohibited transactions each time they withdrew management fees from Proprietary Funds.

72.     Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2) and 29 U.S.C.§ 1109(a), the Defendants are liable to disgorge all fees received from the Plan, directly or indirectly, and profits thereon, and restore all losses suffered by the Plan caused by their breaches of the duty of loyalty.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A declaration that the Defendants breached their fiduciary duties;

1.     A declaration that the Defendants breached their fiduciary duties under ERISA § 404 and violated ERISA § 406 by causing the Plan to engage in prohibited transactions;

2.     An order compelling the disgorgement of all fees paid and incurred, directly or indirectly, to AEGON subsidiaries and affiliates by the Plan, including disgorgement of profits thereon;

3.     An order compelling the Defendants to restore all losses to the Plan arising from Defendants' violations of ERISA;

4.     An order granting equitable restitution and other appropriate equitable monetary relief against Defendants;

5.     Such other equitable or remedial relief as may be appropriate, including the permanent removal of Defendants from any positions of trust with respect to the Plan, the appointment of independent fiduciaries to administer the Plan, and rescission of the Plan's investments in AEGON Funds;

6.     An order certifying this action as a class action, designating the Class to receive the amounts restored or disgorged to the Plan, and imposing a constructive trust for distribution of those amounts to the extent required by law;

7.     An order enjoining Defendants collectively from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

8.    An order awarding Plaintiffs and the Class their attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g) and/or the Common Fund doctrine; and

9.    An order awarding such other and further relief as the Court deems equitable and just.

Dated:  August 5, 2015

Respectfully submitted,


/s/ Gregory Y. Porter
Gregory Y. Porter, *pro hac vice*
BAILEY & GLASSER, LLP
910 17th Street, NW
Suite 800
Washington, DC  20006
Telephone:      202-463-2101
Facsimile:      202-463-2103
gporter@baileyglasser.com

Peter K. Stris (to be admitted *pro hac vice*)
STRIS AND MAHER LLP
725 South Figueroa Street
Suite 1830
Los Angeles, CA  90017
Telephone:      213-995-6800
Facsimile:      213-261-0299
peter.stris@strismaher.com

Brad J. Brady
BRADY PRESTON BROWN, PC
2735 First Ave SE
Cedar Rapids, Iowa 52402
Phone:          319-866-9277
Facsimile:      319-866-9280
bbrady@bradyprestonbrown.com

Todd M. Schneider
Mark T. Johnson
Kyle G. Bates
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone:      415-421-7100
Facsimile:      415-421-7105
tschneider@schneiderwallace.com

22

mjohnson@schneiderwallace.com
kbates@schneiderwallace.com

Garrett W. Wotkyns
Michael C. McKay
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
8501 North Scottsdale Road, Suite 270
Scottsdale, AZ 85253
Telephone:      480-428-0142
Facsimile:       866-505-8036
gwotkyns@schneiderwallace.com
mmckay@schneiderwallace.com

J. Barton Goplerud, IA Bar AT0002983
HUDSON MALLANEY SHINDLER &
ANDERSON PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Telephone:      515-223-4567
Facsimile :      515-223-8887
jbgoplerud@hudsonlaw.net

Todd S. Collins
Shanon J. Carson
BERGER &MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103-6365
Telephone:      800-424-6690
Facsimile:       215-875-4604
tcollins@bm.net
scarson@bm.net