IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| LEQUITA DENNARD, JOHN GULO, TERRANCE LAVELA, KATHRYN A. SEDLACEK, HENRY D. SCHMOLL, and PHILIP A. KRAMER, | Case No. 1:15-cv-00030-EJM |
| Plaintiffs, | Judge:      Hon. Edward J. McManus<br>Magistrate:  Hon. Jon S. Scoles |
| v. | |
| TRANSAMERICA CORPORATION, TRANSAMERICA FINANCIAL LIFE INSURANCE COMPANY, TRANSAMERICA RETIREMENT SOLUTIONS CORPORATION, KIRK BUESE, RALPH ARNOLD, KEN KLINGER, MARY TAIBER, DIANE MEINERS, and DOES 1 through 10, inclusive, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER**

**I.      Introduction**

Plaintiffs Lequita Dennard, John Gulo, Terrance Lavela, Kathryn A. Sedlacek, Henry D.

Schmoll, and Philip A. Kramer ("Plaintiffs"), plaintiffs in the above-captioned class action

lawsuit (the "Action"), respectfully submit this memorandum in support of their unopposed

motion for an order: (1) conditionally certifying the Monetary Relief Class and Structural

Changes Class[1] (the "Settlement Classes") and appointing Class Counsel; (2) preliminarily

approving the Settlement; (3) enjoining Settlement Class Members from litigating any claims

that arise out of, or relate in any way to, the claims at issue in this action pending final approval

of the settlement; (4) directing notice to Settlement Class Members, and approving the plan and

---

[1] Capitalized terms herein have the definitions set forth in the Class Action Settlement Agreement submitted herewith as Exhibit 1, unless otherwise defined herein.

form of notice; (5) appointing KCC Class Action Services, LLC as Settlement Administrator; (6) scheduling a Fairness Hearing; and (7) scheduling a hearing on Plaintiff's motion for fees and costs and the payment of a service award ("Preliminary Approval Order").

Plaintiffs respectfully request that the Court enter the above-described order to preliminarily approve the settlement negotiated by Plaintiffs and Defendants in this action. Plaintiffs and Defendants seek to compromise and thereby settle all issues and claims alleged in the Second Amended Complaint filed as Docket No. 75 in the Action (the "Complaint") on behalf of all members of the proposed Settlement Classes. To that end, Plaintiffs and Defendants have agreed to a settlement of the Action that Class Counsel have determined will provide fair and adequate relief to the proposed Settlement Classes for the claims alleged in the Complaint (which are brought under the Employee Retirement Income Security Act ("ERISA")) during the period February 6, 2009 to the date of the Preliminary Approval Order ("Relevant Period").

In short, Plaintiffs allege that the Transamerica 401(k) Retirement Savings Plan (formerly the AEGON Companies Profit Sharing Plan) suffered losses from ERISA-violating conduct by the Defendants. Defendants dispute these claims. In the Settlement Agreement Defendants agree to make certain structural changes to the Plan, which are necessarily applicable to all current Plan participants, and therefore a non-opt-out Structural Changes Class, appropriately certified under Rule 23(b)(2), is proposed. Defendants have also agreed to make a monetary payment to members of a Monetary Relief Class, and because inconsistent adjudication with respect to Monetary Relief Class members would establish incompatible standards of conduct for Defendants, it is appropriate to certify the Monetary Relief Class under Rule 23(b)(1). All members of the Structural Changes Class are members of the Monetary Relief Class, but the

converse is not true as former participants in the Plan may receive monetary relief but no longer have an interest in structural changes to the Plan.

The proposed settlement is fair and meets the requirements for preliminary approval. In the process of negotiating and agreeing to the terms set forth in the Settlement Agreement, Class Counsel concluded that the Settlement Agreement is fair, reasonable and adequate, provides benefits to the Settlement Classes that justify the corresponding release of claims, and is in the best interests of the Settlement Classes. In reaching this conclusion, Class Counsel considered: (1) the substantial benefits, including monetary and non-monetary relief, afforded to the Settlement Classes by the proposed settlement; (2) the risks and uncertainties attendant on complex litigation such as the Action; (3) the expense and length of time necessary to prosecute the Action through trial and any subsequent appeals; and (4) the desirability of consummating the Settlement Agreement promptly to provide effective relief to the members of the Settlement Classes. Plaintiff and Class Counsel believe that the terms set forth in the Settlement Agreement are fair, reasonable, adequate and in the best interests of the Settlement Classes. Thus, Plaintiffs petition the Court for an Order:

(1)      conditionally certifying the Monetary Relief Class and the Structural Changes Class as non-opt-out classes and appointing Lead Counsel;

(2)      preliminarily approving the Settlement;

(3)      enjoining the Settlement Class Members from pursuing claims that arise out of, or relate in any way to, the claims at issue in this action pending final approval of the settlement;

(4)      directing notice to the Monetary Relief Class Members and approving the plan and form of notice;

(5)      appointing KCC Class Action Services, LLC as Settlement Administrator and directing it to implement the plan of notice to the Monetary Relief Class in the form approved by the Court;

    (6)      scheduling a Final Approval Hearing at which time Settlement Class Members who have given notice of their intent to appear may be heard ("Fairness Hearing"); and

    (7)      scheduling a hearing on Plaintiffs' impending application for fees and costs.

In support of this Motion, Plaintiffs submit the following documents:

- Settlement Agreement executed by the parties, attached hereto as Exhibit 1, including as exhibits a proposed Preliminary Approval Order, proposed Notice, and proposed Judgment;

- Declaration of Gregory Y. Porter ("Porter Decl."), one of Plaintiffs' Counsel.


## II.    SUMMARY OF CLAIMS AND DEFENSES

### A.    Claims

Plaintiffs, individually and as representatives of a putative class, brought the Action in their capacities as participants in the Plan against Defendants. The Action alleges that Defendants violated ERISA §§ 404 and 406, 29 U.S.C. §§ 1104, 1106, as further described below.

Defendant Transamerica Corporation ("Transamerica") is a Delaware corporation with its principal place of business in Cedar Rapids, Iowa. It sponsors the Plan and is a fiduciary under ERISA for the Plan because it established and administers the accounts in which the Plan invest, in addition to appointing, monitoring, and removing the members of the plan committees. Defendant Transamerica Retirement Solutions Corporation is an affiliate of Transamerica and a fiduciary to the Plan in its capacity as investment manager for a collective trust in which the Plan invested. Defendants Kirk Buese, Ralph Arnold, Ken Klinger, Mary Taiber, and Diane Meiners were Trustees for the Plan during the Relevant Period. The Trustees were responsible for selecting the investment options made available to the Plan's participants and were fiduciaries under ERISA.

ERISA requires that plan fiduciaries act solely in the interest of Plan participants when making decisions with respect to selecting, removing, replacing, and monitoring the Plan's investments. Plaintiffs allege that Defendants are plan fiduciaries and failed to fulfill these fiduciary duties by offering investment options that benefitted Transamerica.

Based upon these allegations, Plaintiffs brought claims against Defendants for breaches of duties of loyalty in violation of § 404(a)(1)(A) of ERISA, and engaging in prohibited transactions in violation of § 406 of ERISA. The Complaint seeks, *inter alia*, declarations that Defendants breached fiduciary obligations and violated ERISA § 406; disgorgement of fees paid or incurred by the Plan; and restoration by Defendants to the Plan of all a losses resulting from Defendants' ERISA violations.

**B.      Defenses**

Defendants deny the allegations in the case and assert that their conduct was entirely proper.  Defendants contend that the Plan Sponsor bore the Plan's administrative fees, and thus that there is no question that the administrative fees of the Plan were reasonable.  Defendants also maintain that the practice of offering Transamerica's own products as investment options for the Plan is not only exceedingly common, but also specifically authorized by statutory and regulatory exemptions pursuant to ERISA § 408 allowing financial services companies to offer employees the opportunity to invest in investment products the companies make available to others.  Defendants maintain that they did not engage in prohibited transactions, nor did they breach their fiduciary duties to the Plan under ERISA.

**III.      LITIGATION HISTORY AND SETTLEMENT NEGOTIATIONS**

Before filing the Complaint, Plaintiffs' Counsel undertook extensive investigation to support the allegations and claims in the Complaint. Among other things, Plaintiffs' Counsel, working with consultants, examined and evaluated: plan studies and surveys about the

5

concentration of investment offerings with a single provider; Department of Labor filings from the Plan and peers; Department of Labor filings from parties in interest to the Plan; the investment structure and fees paid by the Plan in comparison with other types of investments and fees generally; plan studies and surveys addressing methods of funding the administrative costs of plans; and peer plan administrative fee structures. Plaintiffs' Counsel, working with consultants, constructed estimated fee models for the Plan extrapolating from the publicly available, incomplete information. Later, Plaintiffs' Counsel, working with consultants, incorporated information shared by Defendants in mediation into these fee models. Porter Decl. ¶ 5. This work by Plaintiffs' Counsel is evident throughout the Complaint, particularly in sections III-VIII.

After the initial complaints in this Action were filed, Defendants' counsel contacted Plaintiffs' counsel to propose confidential discussions about Plaintiffs' allegations and theories. The parties met twice, on May 4, 2015 and May 13, 2015 to review and discuss materials prepared by Defendants. Porter Decl. ¶ 10. Although the parties did not agree to settle the Action during the course of those meetings, the exchange of information laid the ground work for successful private mediation later.

A private mediation was arranged with Hunter Hughes. Mr. Hughes has extensive experience in mediating complex ERISA class actions, including cases involving claims of excessive fees similar to the claims alleged in the Action. The parties exchanged mediation briefs and other supporting documentation in advance of the January 15, 2016 mediation. At the day-long mediation, the parties were able to reach tentative agreement on some, but not all, key terms. Porter Decl. ¶ 11.

Subsequent to the mediation, on January 19, 2016 Mr. Hughes made a mediator's proposal to the parties, i.e., a proposal offered on a take-it-or-leave-it basis. The parties accepted Mr. Hughes' proposed terms. Porter Decl. ¶ 11.

Thereafter, the parties prepared and executed the Settlement Agreement presented to the Court on this motion, memorializing the terms of the Settlement for which Plaintiffs now seek preliminary approval. *See* Settlement Agreement, attached as Exhibit 1. The terms of the Settlement Agreement were the result of extensive, arms' length, and protracted negotiation, before, during and after the mediation.

## IV.  TERMS OF THE SETTLEMENT AGREEMENT

The material terms of the parties' Settlement Agreement are summarized below.

### A.  Benefits to the Structural Changes and Monetary Relief Classes.

Defendants have agreed to make a monetary payment of $3.8 million ("Settlement Amount"). Settlement Agreement, ¶¶ 1.38, 2.7, 3.1. In addition to the monetary payment, the relief provided in the Settlement includes substantial affirmative relief. Defendants will implement the following changes to the Plan (the "Structural Changes"), unless otherwise noted:

- For the shorter of a period lasting three years from the date of the Court's entry of the Preliminary Approval Order (the "Compliance Period"), or as long as the Plan invests in any of the TFLIC Pooled Separate Accounts that invest in Transamerica Asset Management-advised Registered Investment Companies, the Plan's separate account fee for each of the TFLIC Pooled Separate Accounts, (inclusive of fees collected from the TFLIC Pooled Separate Accounts and fees and expenses charged in connection with the management of the underlying TAM-advised Registered Investment Companies) shall not exceed those in effect as of December 31, 2015 as set forth in **Exhibit E** to the Settlement Agreement and Release.

- For the duration of the Compliance Period, the Plan's trustees will add a third-party, low-fee bond index mutual fund to the Plan's investment lineup, with fees not to exceed seven (7) basis points per annum.  Also for the duration of the Compliance Period, the Plan's trustees will maintain an S&P 500 index mutual fund option with an expense ratio not to exceed two (2) basis points per annum.

7

The provisions in this paragraph are subject to the availability of suitable such products in the market.

- For the duration of the Compliance Period, the Plan will continue to retain the services of an unaffiliated investment consultant to provide an annual evaluation of the Plan's investment lineup and brokerage window arrangements.

- The Plan's trustees shall revise the Summary Plan Description to delineate the investment structures of the Plan and to detail the funds used in the Portfolio Express Qualified Default Investment Alternative.

- For the duration of the Compliance Period, Transamerica will continue to rebate all mutual fund revenue sharing to the Plan as a plan service credit.

- For the duration of the Compliance Period, Transamerica will continue to rebate any sub-advisor fees for affiliated sub-advisors to the Plan as a plan service credit.

- For the duration of the Compliance Period, Transamerica will continue to provide recordkeeping services to the Plan at no cost.

- For the duration of the Compliance Period, Transamerica will continue to offer participants access to a wide range of non-affiliated mutual fund investments through a brokerage window.

The Plan changes that Defendants will make as part of this settlement have significant value to the Plan's participants. Plaintiffs' Counsel estimates that the future monetary value of the components of the prospective relief are as follows:

- Recordkeeping and plan administration fees absorbed by Transamerica: $1,000,000 (assuming an estimate of $20 per participant per year and approximately 17,000 participants per the Plan's annual financial statement for 2014);

- Retaining an investment consultant: $250,000-$375,0000;

- Retaining an S&P 500 Index Fund charging no more than 2 basis points: $1,325,000 (assuming the index fund ultimately attracts 20% of the assets currently invested in the Plan's three existing Large Cap funds);

- Addition of bond index fund charging no more than 7 basis points: $198,000 (assuming the bond fund attracts 20% of the assets currently invested in the Plan's existing core bond fund);

- Rebate all revenue sharing received from external funds to participants who invested in fund: $65,000 annually.

- Rebate all affiliated sub-advisor fees to participants who invest in any funds with affiliated sub-advisors: $120,000 annually.

Accordingly, Plaintiff's Counsel estimates the total monetary value of the prospective relief at $2,958,000 – $3,083,000.

In addition, Transamerica may select an independent fiduciary to provide such authorization as may be required by Prohibited Transaction Exemption 2003-39. Settlement Agreement at, ¶ 2.9(a). All costs reasonably borne by the independent fiduciary, including the reasonable fees of the independent fiduciary, to the extent such costs do not exceed $40,000, shall be borne by the Settlement Fund. Such costs in excess of $40,000 shall be paid or reimbursed from funds, if any, returned to the Settlement Fund as a result of the failure of Monetary Relief Cass members to cash distribution checks within ninety days from the date of distribution. *Id.*

After payment of any Case Contribution Award and Attorney Fees and Expenses approved by the Court, Independent Fiduciary Fees' Administration Costs, and Taxes and Tax-Related Costs, the remaining settlement amount ("Distributable Settlement Amount"), Settlement Agreement ¶ 3.2, shall be allocated among the Monetary Relief Class Members on a pro rata basis predicated upon their Average Plan Account Balances subject to the Plan of Allocation described in Exhibit C to the Settlement Agreement. As set forth in Settlement Agreement Exhibit C:

(1)     Monetary Relief Class Members who no longer have a positive balance in their Plan account as of the Distribution Date will receive a check from the Settlement Administrator.

(2)     All other Monetary Relief Class Members, *i.e.*, Monetary Relief Class Members who have a Plan account with a positive balance as of the Distribution Date, will receive settlement proceeds into their Plan account in the amount provided for by

9

the Plan of Allocation. To the extent feasible and ascertainable, those settlement proceeds will be invested based on the participant's election mix for new contributions or, if no such election is in effect, to the applicable qualified default investment option.

(3)     No payment made in subsection (1) (2) and (3) above shall be lower than $10 per Monetary Relief Class Member; any Monetary Relief Class Member whose entitlement to payment based on their Average Plan Account Balance during the Allocation Period would otherwise be below $10 will receive a payment of $10.

(4)     Any Monetary Relief Class Member who did not have any balance in his or her Plan account prior to January 1, 2014 shall receive a distribution of $10, which the parties agree is a reasonable amount for such Monetary Relief Class Members.

(5)     All Monetary Relief Class Members shall be entitled to participate in the Plan of Allocation.

### B.      Case Contribution Award to Plaintiffs and Attorneys' Fees and Costs

Subject to Court approval, Class Counsel fees, costs and expenses, and a Case Contribution Award payment to Plaintiffs shall be paid from the Settlement Fund prior to distribution of the Distributable Settlement Amount to the Monetary Relief Class. Settlement Agreement, ¶ 3.1. The Named Plaintiffs shall petition the Court for an award not to exceed $6,000 in recognition of their service as class representative. Settlement Agreement, ¶ 8.1. Named Plaintiffs shall also be entitled to further distribution under this settlement as a Monetary Relief Class Member. *Id.* Class Counsel may petition the Court for an award of attorney's fees and costs. Settlement Agreement, ¶ 8.2. Defendants agree that they will not object either to the requests of Named Plaintiffs for a service award nor to the request of Class Counsel's attorneys' fees and costs. Settlement Agreement, ¶¶ 8.1, 8.2. All requests shall be subject to Court approval. Settlement Agreement, *id.*

### C.      Release of Claims

Plaintiff and the Settlement Classes will provide a release to Defendants and the other Released Parties pursuant to Section 6.1 of the Settlement Agreement, and covenants not to sue

10

relating to any claims arising out of, or relating in any way to, the subject matter of the Action. Settlement Agreement, ¶¶ 6.1, 6.2, 1.35. The release and covenant not to sue will include direct and derivative claims on behalf of any class of Transamerica employees, claims under ERISA, common law and any other statute, and shall extend to all Defendants, including each of their present, past, and future predecessors, successors, parents, subsidiaries, affiliates, divisions, assigns, officers, directors, committees, employees, fiduciaries, administrators, actuaries, agents, insurers, representatives, attorneys, retained experts and trustees. Settlement Agreement ¶¶ 6.1, 1.35, 1.12. Class Counsel have agreed that Defendants shall have no obligations whatsoever with respect to any attorneys' fees or expenses incurred by Class Counsel, which shall be payable solely out of the Settlement Amount. Settlement Agreement ¶¶ 8.2, 1.35.

Plaintiff and the Settlement Classes further covenant not to sue Transamerica with respect to the structural changes Transamerica has agreed to make to the Plan so long as the Structural Changes remain in effect. This covenant not to sue expires at the end of the calendar year occurring six years after this Court enters a final order identical in all material respects to that found at Exhibit A to the Settlement Agreement, except insofar as the Parties agree to modifications. Settlement Agreement ¶¶ 6.2(b), 1.20, 1.21.

### D.    Notice and Proposed Schedule of Events

The Settlement Agreement provides that Transamerica shall provide the Settlement Administrator with the names and last known addresses of Settlement Class Members for the purpose of providing notice of the proposed settlement. Settlement Agreement ¶ 6.5.

The proposed Class Notice, Exhibit B to the Settlement Agreement, provides all the information necessary to inform Settlement Class Members about the nature of the Action, the terms of the Settlement, including both monetary and prospective relief, and the procedures for entering an appearance to be heard or to object to the Settlement. In addition, Class Counsel will

make available to Settlement Class Members key court documents, including Plaintiff's Motion for Award of Attorneys' Fees, via the website www.XXXXXXXXXXXXXXX.com. The Class Notice will be mailed by U.S. mail, first class or sent via email (if available). Class Counsel anticipate that Settlement Class Member mailing information supplied by Transamerica will be accurate for two reasons. First, many Settlement Class Members are current employees of Transamerica for which Transamerica almost certainly has valid mailing addresses and/or email addresses. The same will be true of many former employees who are Settlement Class Members. For undelivered or returned mail to Settlement Class Members, the Settlement Administrator will engage in various, standardized processes to identify and locate Settlement Class Members.

Plaintiff and Transamerica agree to the following schedule of events subject to the Court's approval:

| Event | Timing |
|---|---|
| Preliminary Approval Hearing | TBD |
| Transamerica to provide Settlement Administrator with class list and Class contact information | Fourteen days after Preliminary Approval Order |
| Mail Settlement Notice | Thirty days after Preliminary Approval Order |
| Settlement Administrator's declaration on notice | Thirty-five days after Preliminary Approval Order |
| Plaintiff's motions for final approval of the Settlement, and for an award of attorneys' fees and expenses, and for a Service Award for Named Plaintiff | Thirty days before Fairness Hearing |
| Objections to the Settlement and notice of intention to appear at Fairness Hearing | Fifteen days before Fairness Hearing |
| Independent Fiduciary report (if hired) | Fifteen days before Fairness Hearing |
| Response to Objections | Seven days before Fairness Hearing |
| Fairness Hearing | TBD (not less than 110 days after Preliminary Approval Order) |

## V.     ARGUMENT

### A.     The Court should certify the Settlement Classes because the requirements of Rules 23(a), 23(b)(1), 23(b)(2), and 23(g) of the Federal Rules of Civil Procedure are satisfied.

In connection with preliminary approval of the settlement, Plaintiffs seek class certification for settlement purposes. As part of the settlement, Plaintiffs propose, and solely for purposes of agreeing to settle the claims and without waiving any defenses to class certification should the settlement not be approved, Transamerica does not object to, certification of the Monetary Relief Class defined as follows as a non-opt-out class:

> The "Monetary Relief Class" will consist of all current and former participants in the Transamerica 401(k) Retirement Savings Plan who maintained a balance of any amount in the Plan at any point during the period from February 6, 2009 to the date of the Preliminary Approval Order;

and certification of the Structural Changes Class as follows as a non-opt-out class:

> The "Structural Changes Class" will consist of all participants in the Transamerica 401(k) Retirement Savings Plan on or after the date of entry of the Preliminary Approval Order.

Certification of a class action is governed by Fed. R. Civ. P. 23. Rule 23(a) provides that a class action may be maintained if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a), Fed. R. Civ. P. Moreover, a class action must satisfy at least one of the requirements set forth in Rule 23(b)(1), (2) or (3). Here, Plaintiffs seek certification of the Monetary Relief Class under Rule 23(b)(1) and certification of the Structural Changes Class under Rule 23(b)(2).

### 1.     The Settlement Classes satisfy the requirements of Rule 23(a).

#### a)     The Settlement Classes are so numerous that joinder is impracticable.

The Settlement Classes satisfy the numerosity requirement because they are composed of thousands of persons, in numerous locations. According to the Plans' annual financial statements, as of the most recent Form 5500 and Financial Statement for the Plan (fir FY 2014), the Plan had over 16,000 participants with account balances. The number of Settlement Class Members is so large that joinder of all its members is impracticable and thus, the numerosity element easily satisfied. *See Paxton v. Union Nat'l Bank*, 688 F.2d 552, 560-61 (8th Cir. 1982) (affirming certification of class of 74 individuals). Moreover, courts have held that a lesser showing of numerosity may be required when the defendants' alleged conduct uniformly affects the entire class. *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983) (adding that, in close situations, the balance should be struck in favor of finding the numerosity requirement satisfied). Here, Defendants' alleged conduct affects the entire class on a uniform basis.

   **b)**   **There are questions of law and fact common to the Settlement Classes.**

Fed. R. Civ. P. 23(a)(2) "does not require that every question of law or fact be common to every member of the class." *Paxton*, 688 F.2d at 561. The class members' claims "must depend upon a common contention . . . . That common contention, moreover, must be of such nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "The burden imposed by this requirement is light and easily met in most cases." *Wineland v. Casey's General Stores, Inc.*, 267 F.R.D. 669, 674 ( S.D. Iowa 2009).

Here, there are numerous questions of law or fact common to both classes and central to the case including, but not limited to:

a. Whether Defendants caused the Plan to offer, or failed to monitor or remove, investment options established or managed by Transamerica;

b. Whether Defendants were fiduciaries responsible for monitoring and making decisions with respect to the investments in the Plan;

c. Whether Defendants breached their fiduciary duties to the Plan by causing the Plan to invest its assets in certain investment options offered or managed by Transamerica or its subsidiaries and affiliates, or failing to monitor or remove such options;

d. Whether the investment decisions made by Defendants were solely in the interests of the Plan's participants and beneficiaries;

e. Whether the Plan suffered losses as a result of Defendants' fiduciary breaches.

Each of these questions is not only common to the classes, but will generate common answers apt to drive the resolution of the litigation. *Dukes*, 131 S.Ct. 2541, at 2551. As such, Plaintiff's allegations clearly meet the Rule 23(a)(2) standard for commonality.

### c) Plaintiff's claims are typical of the claims of the Settlement Classes.

The typicality requirement of Rule 23(a)(3) is satisfied when "other members of the class have the same or similar grievances as the plaintiff. The burden is fairly easily met so long as other class members have claims similar to the named plaintiff." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). Where "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented," typicality is satisfied "irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). "The typicality requirement is often met in putative class actions brought for beaches of fiduciary duty under ERISA." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 143 (S.D.N.Y. 2010).

All members of the Settlement Classes invested retirement assets in the Plan. Thus, Defendants' alleged misconduct harmed all Class Members in the same way, in that the Complaint alleges that class members lost millions of dollars in the form of higher fees and

lower returns on their investments than they would have otherwise experienced. Thus, Plaintiffs' claims arise from the same course of conduct that gave rise to the claims of other Class Members.

> **d)**     **Plaintiffs will fairly and adequately represent the Settlement Classes.**

"The adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n. 20 (1997) (citing *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 157 n. 13 (1982)). The requirement encompasses two separate inquiries: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharm., Inc*., 350 F.3d 1181, 1190 (11th Cir. 2003) (internal citations omitted). Moreover, "[o]nly conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012).

Plaintiffs, who suffered losses as participants in the Plan, have no interests that are antagonistic to the interests of any of the members of the Settlement Classes. Current participants share a common goal: participating in a well-run retirement plan that provides an array of prudent investment options at a reasonable cost. The prospective relief has significant value to current and future participants. Former participants have an interest in monetary relief. Here, all Settlement Class Members will benefit from the substantial monetary relief obtained in the

Actions. In sum, Plaintiffs stand in the same shoes as the other members of the Settlement

Classes with the same incentives to pursue and consummate a fair and reasonable settlement.

### 2. The Monetary Relief Class satisfies the requirements of Rule 23(b)(1).

Rule 23(b)(1) provides that a class may be certified if the Rule 23(a) prerequisites are met

and "prosecuting separate actions by or against individual class members would create a risk of

(A) inconsistent or varying adjudications with respect to individual class members that would

establish incompatible standards of conduct for the party opposing the class or (B) adjudications

with respect to individual class members that, as a practical matter, would be dispositive of the

interests of the other members not parties to the individual adjudications or would substantially

impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1). "[T]he

Advisory Committee Notes to the 1966 Amendment of Rule 23(b)(1)(B) specifically state that

certification is especially appropriate in cases charging breach of trust by a fiduciary to a large

class of beneficiaries." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 142 (S.D.N.Y. 2010).

Courts routinely certify class actions alleging breach of ERISA fiduciary duties pursuant

to Rule 23(b)(1). *See, e.g., Krueger v. Ameriprise Financial, Inc.*, 304 F.R.D. 559, 575-578 (D.

Minn. 2014); *Pashchal v. Child Development, Inc.*, No. 4:12-CV-0184, 2014 WL 112214, at *6

(E.D. Ark. Jan. 10, 2014); *In re Beacon Assocs. Litig.* 282 F.R.D. 315, 341-42 (S.D.N.Y. 2012);

*Jones v. NovaStar Financial, Inc.*, 257 F.R.D. 181, 192-194 (W.D. Mo. 2009); *In re Marsh*

*ERISA Litig.*, 265 F.R.D. at 142-44; *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 74-77 (S.D.N.Y.

2006); *Banyai v. Mazur*, 205 F.R.D. 160, 165 (S.D.N.Y. 2002) (same). *See generally In re*

*Schering Plough Corp. ERISA Litig.*, 589 F.3d 585 (3d Cir. 2009) ("breach of fiduciary claims

brought under 502(a)(2) are paradigmatic examples of claims appropriate for certification as a

Rule 23(b)(1) class, as numerous courts have held").

As an ERISA breach of fiduciary duty action, this action is a typical 23(b)(1) class action. Prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications with respect to individual members of the Monetary Relief Class that would establish incompatible standards of conduct for the Plan. It would be wholly impractical, if not potentially unlawful, for Transamerica to adopt different Plan terms for different employees depending on the outcome of individual actions.

Thus, a class-wide settlement is the superior method for the fair and efficient resolution of this controversy. Joinder of all Members of the Monetary Relief Class is impracticable. The losses suffered by some of the individual Members of the Monetary Relief Class may be small, and it would therefore be impracticable for individual members to bear the expense and burden of individual litigation to enforce their rights. Moreover, Defendants, as alleged fiduciaries of the Plan, were obligated to treat all Monetary Relief Class Members similarly as the Plan's participants pursuant to written plan documents and ERISA, which impose uniform standards of conduct on fiduciaries. Individual proceedings, therefore, would pose the risk of inconsistent adjudications. Given the nature of these allegations, no Monetary Relief Class Member has an interest in individually controlling the prosecution of the Action, and Plaintiffs are not aware of any difficulties likely to be encountered in the management of the Action as a class action.

3.      **The Structural Changes Class satisfies the requirements of Rule 23(b)(2).**

The Court should certify the Structural Changes Class under Rule 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the class, so that the Structural Changes proposed are appropriate respecting the class as a whole.  Again here, Defendants, as alleged fiduciaries of the Plan, were obligated to treat all Structural Changes Class Members similarly as the Plan's participants pursuant to written plan documents and

ERISA, which imposes uniform standards of conduct on fiduciaries. The final injunctive relief represented by the structural changes in the Settlement Agreement is appropriate for, and indeed can only be applied to, the class as a whole.

### 4. The Court should appoint Lead and Class Counsel.

Fed. R. Civ. P. 23(g) requires a court to appoint lead counsel. In appointing lead counsel, the Court "must" consider:

> (i)    the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii)    counsel's knowledge of the applicable law; and
>
> (iv)    the resources that counsel will commit to representing the class;

Fed. R. Civ. P. 23(g)(1)(A). The court "may" also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

All these factors support appointment of Gregory Y. Porter of Bailey & Glasser LLP and Todd S. Schneider of Schneider Wallace Cottrell Brayton Konecky, LLP as co-lead counsel for the Settlement Classes. Plaintiffs' Counsel worked closely with consultants to investigate the claims, performed numerous analyses of complex financial and investment data, and reviewed thousands of pages of Plan documents, financial statements, prospectuses, studies, surveys, and other information and data to prepare the Complaint. As the detailed and substantive allegations in the Complaint reflect, the Complaint is the product of hundreds of hours of extensive and careful research and analysis. A detailed recitation of the work performed in the Action is set forth in Paragraphs 4 through 11 of the Porter Declaration.

19

Plaintiffs' Counsel has substantial experience with ERISA litigation, including class action litigation. Gregory Porter has represented both plaintiffs and defendants in ERISA class actions, including as lead counsel: *Anderson v. Principal*, No. 15-cv-00119 (S.D. Ia; $3 million cash and approximately $8 million in prospective fee reductions in 2015); *Bilewicz v. FMR LLC*, No. 13-10636 (D. Mass.; $12 million cash and structural changes in 2014); *Glass Dimensions, Inc. ex rel. Glass Dimensions, Inc. Profit Sharing Plan & Trust v. State Street Bank & Trust Co.*, Civ. Action No. 10-10588 (D. Mass.; $10 million cash settlement in 2014); *Diebold v. Northern Trust Investments*, Civil Action No. 09-7203 (N.D. Ill; $36 million cash settlement in 2015). Mr. Porter worked with a team of associates with years of ERISA litigation experience.

Schneider Wallace also has substantial experience in ERISA litigation and has settled three recent ERISA class action for a combined total of $70 million.[2]  For the past several years, Schneider Wallace has committed time, energy and resources to investigating misconduct by broker-dealers, investment advisers and retirement plan fiduciaries and retained an expert consulting firm to help identify fiduciaries who are selecting imprudent investments for and/or charging excessive fees to the retirement plans they service.  Schneider Wallace has been particularly active in this area, serving as lead class counsel in *Rozo v. Principal Life Insurance Co.*, No. 4:14-cv-00463 (D. Iowa), for example; a class action filed recently by Schneider Wallace

---

[2] *See Glass Dimensions, Inc. v. State Street Corp.,* No. 1:10-cv-10588 (D. Mass.) ("*Glass Dimensions*") (ERISA class action alleging defendants collected excessive securities lending fees from plan participants settled for $10 million); and *Diebold v. Northern Trust Investments*, No. 1:09-cv-01934 (N.D. Ill.) ("*Diebold*") (settled for $36 million) and *Louisiana Firefighters' Retirement System et al. v. Northern Trust Investments, N.A.,* C.A. No. 09-7203A (N.D. Ill.) ("*Firefighters*") (settled for $24 million) (the *Diebold* and *Firefighters* actions asserted that Northern Trust breached its ERISA fiduciary duties to a class of retirement plans by charging retirement plan participants excessive fees and by imprudently investing cash collateral received through its securities lending program).

alleging that Principal Life breached its fiduciary duties to the retirement plans that invested in guaranteed investment contracts ("GICs") that paid Principal excessively high fees and allowed Principal to retain unreasonable and excessive profits.[3] *See also Teets v. Great-West Life & Annuity Ins. Co.*, a putative class action recently filed by Schneider Wallace and Bernstein Law and their co-counsel alleging that Great-West breached its fiduciary duties to the retirement plans that invested in its GICs by using its discretionary authority under the contracts to pay itself excessively high fees and to retain unreasonable and excessive profits.[4]

Mr. Porter's individual resume and a fuller description of Bailey & Glasser's experience litigating complex class actions are attached as Exhibits A and B, respectively, to the Porter Declaration. Schneider Wallace's firm resume is attached as Exhibit C to the Porter Declaration. The remaining Plaintiffs' counsel also are extremely well-qualified and highly experienced in ERISA and complex litigation. All of Plaintiffs' counsel made valuable and substantial contributions to the successful result obtained for the Settlement Classes.

**B.  The Court should grant preliminary approval of the Settlement because it is fair, adequate and within the range of possible approval.**

**1.  The standards for preliminary approval.**

Federal Rule of Civil Procedure 23(e) provides that a class action cannot be settled or compromised without approval by the court. Judicial approval is required regardless of whether the action is certified for trial and later settled or is certified for purposes of settlement. Manual for Complex Litigation (Fourth) § 21.61 (2004). Ultimately, to approve the proposed settlement the Court must determine that it is fair, reasonable and adequate. *In re Uponor, Inc.*, 716 F.3d 1057, 1063 (8th Cir. 2013).

---

[3] *Rozo v. Principal Life Insurance Co.*, No. 4:14-cv-00463 (D. Iowa).
[4] *Teets v. Great-West Life & Annuity Ins. Co.*, No. 14-cv-002330 (D. Colo.).

"At the preliminary approval stage, the Court need not make a final determination regarding the fairness, reasonableness and adequateness of a proposed settlement; rather, the Court need only determine whether it falls within the range of possible approval." *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 140 (D.P.R. 2010); *In Re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534–35 (3d Cir. 2004); *Colella v. Univ. of Pittsburgh*, 569 F. Supp. 2d 525, 527 (W.D. Pa. 2008). "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *see also Young v. Polo Retail, LLC*, C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006); *In re Vitamins Antitrust Litig.*, MISC. 99-197 (TFH), 2001 WL 856292, at *4-5 (D.D.C. Jul. 25, 2001); 4 Alba Conte, Herbert B. Newberg, Newberg on Class Actions, § 11.25, p. 38 (4th ed. 2002).

The Court's analysis should begin with the presumption that the settlement is fair. *See, e.g., City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996); *Duhaime v. John Hancock Mut. Life. Ins. Co.*, 177 F.R.D. 54, 68 (D. Mass. 1997); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 176 F.R.D. 158, 184 (E.D. Pa. 1997). Thus, at this stage, so long as the settlement falls into the range of possible approval — giving deference to the result of the parties' arm's length negotiations and the judgment of experienced counsel following sufficient investigation and discovery — the settlement should be preliminarily approved and a final fairness hearing scheduled.

To determine whether a settlement is fair, adequate, and reasonable, "a district court should consider: (1) the merits of the plaintiff's case weighed against the terms of the settlement,

(2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement." *In re Uponor, Inc.*, 716 F.3d at 1063 (internal alteration and quotation marks omitted).

"Preliminary approval of a class action settlement requires the Court to consider whether '(1) the negotiations occurred at arms' length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *Gerardo v. Quong Hop & Co.*, No. C 08-3953 JF (PVT), 2009 WL 1974483, at *2 (N.D. Cal. July 7, 2009). "Because class members will subsequently receive notice and have an opportunity to be heard on the settlement, this Court need not review the settlement in detail at this juncture; instead, preliminary approval is appropriate so long as the proposed settlement falls within the range of possible judicial approval*." In re M.L. Stern Overtime Litig.,* No. 07-CV-0118, 2009 WL 995864, at *3 (S.D. Cal. Apr. 13, 2009) (citation and internal quotation omitted).

      **2.**      **The proposed settlement is fair and within the range of possible approval.**

              **a.**      **The Settlement is the result of serious, arms' length and informed negotiations.**

An indication of whether a settlement is fair and reasonable is whether it is the product of serious, arms' length negotiations coupled with extensive analysis and investigation. Extensive negotiations and investigations minimize concerns that the Settlement Agreement might be the result of collusion among opposing parties or their counsel to undermine the interests of the class for their own benefit.

The settlement in the Action was achieved through extensive, arms' length settlement negotiations under the guidance of the mediator, Mr. Hunter Hughes. Mr. Hughes has extensive experience mediating complex class actions, including several ERISA class actions involving

fiduciary breach claims.[5] In addition to the in-person mediation session, Mr. Hughes communicated with the parties by phone and email to achieve a settlement. With his assistance, the parties ultimately reached agreement and executed a memorandum of understanding summarizing the key terms on January 23, 2016.

The Complaint in the Action was the product of hundreds of hours of extensive and careful research and analysis. Plaintiffs' Counsel worked closely with consultants to investigate the claims, performing numerous analyses of complex financial and investment data, in addition to reviewing Plan documents, financial statements, prospectuses, studies, surveys, and other information and data to prepare the Complaint. Prior to mediating with Mr. Hughes, the parties met twice to review materials provided by Defendants so that the parties could more accurately evaluate the claims. The parties prepared detailed, substantive mediation briefs before mediation. The parties' respective positions and arguments were also subjected to vigorous questioning and analysis by the mediator, Mr. Hughes. In sum, although there has been no formal discovery to date, Plaintiffs' intense and detailed pre-complaint investigation, the pre-mediation meetings, the mediation briefing, the sharing of information during mediation, and the involvement of Mr. Hughes support a finding that the settlement will have been reached through robust investigation comparable to discovery. *Cf. In re Puerto Rican Cabotage Antitrust Litig.*, 815 F.Supp.2d 448, 473-74 (D.P.R. 2011) (although formal discovery had not commenced, class counsel's substantial investigation and informal discovery permitted court to conclude the parties had sufficient information to make an informed decision about the settlement); *Rossi v. Procter & Gamble Co.*, No. 11-7238, 2013 WL 5523098, at *7 (D.N.J. Oct. 3, 2013) (although case was

---

[5] Mr. Hughes's experience and qualifications are detailed at http://www.hunteradr.org/cv.html. (Last viewed February 23, 2016).

early in discovery, class counsel's substantial pre-suit investigation contributed to finding that parties had conducted sufficiently thorough investigation of the facts supporting settlement).

Finally, as detailed above and in Exhibits A, B and C to the Declaration of Gregory Y. Porter, Plaintiff's Counsel are experienced in complex class actions, including ERISA class actions involving 401(k) plans.

>    **b.    The relief obtained by the Settlement Agreement and the allocation of monetary compensation to the Monetary Relief Class is fair and reasonable.**

Significantly, the Settlement Agreement offers cash compensation in the aggregate amount of $3.8 million, with the net amount (after payment of such attorney's fees and costs, including notice and related costs, and Plaintiffs' Case Contribution Awards as may be allowed by the Court) guaranteed to be paid to the Monetary Relief Class Members. There will be no claims process and therefore no reversion of any part of the Settlement funds to Defendants based upon the failure to make a claim.

Under the Plan of Allocation proposed by Lead Counsel, each Monetary Relief Class Member will be paid in proportion to the average account balance he or she held in the Plan, with a minimum distribution of $10 to every Monetary Relief Class Member. Further, the Plan changes applicable to the Structural Changes Class that Transamerica will make as part of this settlement have significant value to Plan participants, as detailed above.

It is well settled that a proposed settlement is not to be measured against a hypothetical ideal result that might have been achieved. *See, e.g.*, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("This court has aptly held that it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."); *Cotton v. Hinton*, 559 F.2d

1326, 1330 (5th Cir. 1977) ("The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'").

A class settlement need not recover the maximum damages that would be provable after establishing liability at trial, and the recovery of a fraction of that amount is reasonable particularly in a complex and risky case such as the one at bar. Indeed, even recoveries representing a very small percentage of the defendant's maximum exposure may be found to be fair, adequate and reasonable. *See, e.g.*, *Behrens v. Wometco Enters., Inc*., 118 F.R.D. 534, 542 (S.D. Fla.1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *Newbridge Networks Sec. Litig*., No. 94-1678, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a potential recovery . . . seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"); *In re Linerboard Antitrust Litig*., 296 F. Supp. 2d 568, 581 (E.D. Pa. 2003).

Under the circumstances presented in the Action, where the proposed Settlement Classes face numerous opportunities for defeat, including dismissal, denial of class certification, summary judgment, trial, and appeal, not to mention the years of delay should this Action proceed through an appeal, the Settlement Agreement for which the parties seek this Court's approval represents the best realistic recovery for all members of the Settlement Classes, and it is well within the range of possible approval.

These are considerations taken into account by Plaintiffs' Counsel in negotiating and evaluating the fairness of the Settlement and determining that entering into the Settlement is in the best interests of the Settlement Classes. As the case law establishes, the Court should not second guess that determination at this stage so long as the proposed Settlement falls within a reasonable range of possible approval and was the product of arms' length negotiations and vigorous investigation, as here. Although continuing the litigation could conceivably have resulted in a greater recovery for members of the Settlement Classes, the recovery offered through the Settlement is guaranteed, substantial and not dependent on a claims process or other limitation in getting the proceeds of the Settlement Fund to Monetary Relief Class Members and the benefits of the structural changes to the Structural Changes Class Members. The Settlement represents a reasonable compromise given the risks, delay and expense of pursuing the litigation on the merits, including a probable appeal of any judgment in favor of the Settlement Classes and of a Court order certifying the Settlement Classes. The immediacy of the recovery and the guarantee that all members of the Settlement Classes will recover argue for approval of the Settlement Agreement.

      **C.**    **The Court should approve the form and manner of Class Notice and direct that notice be provided to the Monetary Relief Class Members in accordance with the Settlement Agreement and should issue the requested ancillary orders necessary to establish a final approval process.**

Pursuant to Federal Rule of Civil Procedure 23(e)(1) and (e)(5), the Settlement Agreement provides for notice to the Settlement Class, and an opportunity for Settlement Class Members to object to approval of the Settlement. Settlement Agreement ¶¶ 1.26, 2.10, 2.12, 2.13, 2.15; Exhibit B to the Settlement Agreement. The Parties have agreed, subject to Court approval, to a notice plan, which calls for individual mailed notice or emailed notice that will provide Settlement Class Members with sufficient information to make an informed decision about

whether to object to the proposed Settlement. Exhibit B to Settlement Agreement. The notice informs Settlement Class Members of the nature of the action, the litigation background and the terms of the agreement, including the definition of the Settlement Classes, the relief provided by the Settlement Agreement, the intent of Class Counsel to seek fees and costs, the Case Contribution Awards payable to Plaintiffs, and the scope of the release and binding nature of the Settlement on Settlement Class Members. In addition, the Notice informs the Settlement Class Members that additional documents, including the Settlement Agreement, Plaintiffs' Motion for Award of Attorneys' Fees, and the report of the Independent Fiduciary (if retained) are available via the website www.XXXXXXXXXXXXXX.com. The Notice also describes the procedure for objecting to the Settlement and states the date, time and place of the final approval hearing. *Id.* This notice and the manner in which it will be disseminated to Settlement Class Members satisfy Rule 23(e)(1) and constitutional due process concerns and should be approved.

Finally, the Court should approve Plaintiffs' Counsel's selection of a Settlement Administrator and appoint KCC Class Action Services, LLC as Settlement Administrator, charged with undertaking the responsibilities described in the Settlement Agreement. The court should schedule a fairness hearing and hearing on Plaintiffs' motion of an award of reasonable attorney's fees and Case Contribution Awards to Plaintiffs, as set forth in the proposed Preliminary Approval Order. Such orders are necessary to establish a reasonable and efficient process for disseminating notice, providing the opportunity for Settlement Class Members to object to approval of the Settlement, and considering final approval of the Settlement.

## VI.    CONCLUSION

As set forth above, the proposed settlement meets the standard for preliminary approval. Accordingly, Plaintiffs respectfully request that the Court issue an Order: (1) certifying the Settlement Classes and appointing Co-Lead Counsel; (2) granting preliminary approval of the

Settlement; (3) enjoining the Settlement Class Members from pursuing claims that arise out of, or relate in any way to, the claims at issue in this action pending final approval of the settlement; (4) directing notice to Monetary Relief Class Members and approving the plan and form of notice; (5) appointing KCC Class Action Services, LLC as Settlement Administrator; (6) scheduling a Fairness Hearing; and (7) scheduling a hearing on Co-Lead Counsel's motion for fees and costs and the payment of a Case Contribution Award to Plaintiffs.

Dated: May 20, 2016                                    Respectfully submitted,


Gregory Y. Porter, *pro hac vice*
Bailey & Glasser LLP
1054 31st Street, Suite 230
Washington, DC 20007
Tel: 202-463-2101
gporter@baileyglasser.com

Garrett W. Wotkyns, *pro hac vice*
Michael C. McKay, *pro hac vice*
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
8501 North Scottsdale Rd., Suite 270
Scottsdale, AZ 85253
Telephone: (480) 428-0142
Facsimile: (866) 505-8036
gwotkyns@schneiderwallace.com

J. Barton Goplerud IA Bar No. AT0002983
HUDSON MALLANEY SHINDLER &
ANDERSON PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone: (515) 223-4567
Facsimile: (515) 223-8887
jbgoplerud@hudsonlaw.net

  /S/ Todd M. Schneider
Todd M. Schneider, *pro hac vice*
Mark T. Johnson, *pro hac vice*
Kyle G. Bates, *pro hac vice*
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
180 Montgomery St., Suite 2000
San Francisco, California 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
tschneider@schneiderwallace.com
kbates@schneiderwallace.com

Peter K. Stris, *pro hac vice*
STRIS AND MAHER LLP
725 South Figueroa Street
Suite 1830
Los Angeles, CA 90017
Telephone:    213-995-6800
Facsimile:    213-261-0299
peter.stris@strismaher.com

Todd S. Collins, *pro hac vice*
Shanon J. Carson, *pro hac vice*
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103-6365
tcollins@bm.net
scarson@bm.net

Brad J. Brady
BRADY PRESTON BROWN, PC
2735 First Ave SE
Cedar Rapids, Iowa 52402
Phone:         319- 866-9277
Facsimile:     319-866-9280
bbrady@bradyprestonbrown.com

*Attorneys for Plaintiffs*

EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| LEQUITA DENNARD, JOHN GULO, TERRANCE LAVELA, KATHRYN A. SEDLACEK, HENRY D. SCHMOLL, and PHILIP A. KRAMER,<br><br>Plaintiffs,<br><br>v.<br><br>TRANSAMERICA CORPORATION, TRANSAMERICA FINANCIAL LIFE INSURANCE COMPANY, TRANSAMERICA RETIREMENT SOLUTIONS CORPORATION, KIRK BUESE, RALPH ARNOLD, KEN KLINGER, MARY TAIBER, DIANE MEINERS, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 1:15-cv-00030-EJM<br><br>**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**<br><br><br>Judge:      Hon. Edward J. McManus<br>Magistrate:  Hon. Jon S. Scoles |

This Settlement Agreement and Release ("Agreement") is entered into on May 19, 2016, by and among Plaintiffs (as defined below), on their own behalf and on behalf of the Settlement Classes (as defined below) and the Plan (as defined below) on the one hand, and the Defendants (as defined below) on the other, in consideration of the promises, covenants and agreements herein described and for other good and valuable consideration acknowledged by each of them to be satisfactory and adequate.

I.      **DEFINITIONS**

1.1.    "Action" shall mean *Lequita Dennard, et al. v. Transamerica Corporation, et al.*, and any and all cases now or hereafter consolidated herewith.

1.2.    "Administration Costs" shall mean (i) the costs and expenses associated with the production and dissemination of the Notice (as defined in Section 1.26); (ii) all reasonable costs incurred by the Settlement Administrator (as defined in Section 1.37) in administering and

1

effectuating this Settlement, which costs and expenses are necessitated by performance and implementation of this Agreement and any Court orders relating thereto; and (iii) all reasonable fees charged by the Settlement Administrator.

1.3. "Attorneys' Fees and Expenses" shall mean any and all attorneys' fees, costs (including expert costs) and expenses of Class Counsel (as defined in Section 1.6) for their past, present, and future work, efforts, and expenditures in connection with this Action and resulting Settlement.

1.4. "Case Contribution Award" shall have the meaning ascribed to it in Section 8.1.

1.5. "Claims" shall have the meaning ascribed to it in Section 1.35.

1.6. "Class Counsel" shall mean Bailey & Glasser LLP; Stris & Maher LLP; Brady Preston Brown PC; Schneider Wallace Cottrell Konecky Wotkyns LLP; and Hudson, Mallaney, Shindler & Anderson, PC.

1.7. "Court" shall mean the United States District Court for the Northern District of Iowa.

1.8. "Company" shall mean Transamerica Corporation and its affiliates. Aegon USA, LLC was merged into Transamerica Corporation on December 31, 2015.

1.9. "Compliance Period" shall mean a period lasting three years from the date of entry of the Preliminary Approval Order.

1.10. "Current Participant" shall mean any Monetary Relief Class Member with a balance in the Plan on the Distribution Date.

1.11. "Defendants" shall mean the following persons and/or entities: Transamerica Corporation, Transamerica Financial Life Insurance Company, Transamerica Retirement Solutions LLC (formerly Transamerica Retirement Solutions Corporation), Kirk Buese, Ralph Arnold, Ken Klinger, Mary Taiber, and Diane Meiners.

1.12. "Defendants' Counsel" shall mean O'Melveny & Myers LLP and Lynch Dallas, PC.

2

1.13.    "Defendant Released Parties" shall mean Defendants, and each of their predecessors, successors, parents, subsidiaries, affiliates, divisions, assigns, officers, directors, committees, employees, fiduciaries, administrators, actuaries, agents, insurers, representatives, attorneys, retained experts and trustees (including but not limited to the current and past trustees of the Plan).

1.14.    "Distributable Settlement Amount" shall have the meaning ascribed to it in Section 4.2(a).

1.15.    "Distribution Date" shall be the date on which the Settlement Administrator shall disburse the Distributable Settlement Amount, which shall occur as soon as administratively feasible after the Effective Date.

1.16.    "Effective Date" shall mean: (a) the date upon which the applicable period to appeal the Final Approval Order and Judgment has expired, if no appeal is taken during such period; or (b) if, during the aforesaid appeals period, an appeal is taken from such judgment, the date upon which all appeals, including petitions for review, rehearing, or certiorari, and any proceedings resulting therefrom, have been finally disposed of, or the date of the expiration of the time to initiate such petitions or proceedings.  The Parties shall agree by written communication when the Effective Date has occurred; any dispute shall be resolved by the Court.  It is expressly agreed by the Parties and their counsel that no Party intends this provision or any other part of this Agreement to establish or acknowledge that anyone is entitled to or has the right to appeal from the Final Approval Order and Judgment.

1.17.    "Escrow Account" shall mean an account at an established Financial Institution agreed upon by the Parties that is established for the deposit of any amounts relating to the Settlement.

1.18.    "Escrow Agent" shall mean Computershare Trust Company, N.A., or whatever other person or entity is approved by the Court to act as escrow agent for any portion of the Settlement Amount (as defined in Section 1.37) deposited in or accruing in the Escrow Account pursuant to this Agreement.

1.19. "Fee and Expense Application" shall mean the petition to be filed by Class Counsel seeking approval of an award of Attorneys' Fees and Expenses.

1.20. "Final Approval Hearing" shall mean the hearing to be held before the Court pursuant to Federal Rule of Civil Procedure 23(e) to determine whether the Agreement should receive final approval by the Court. The Parties will request that the Final Approval Hearing shall be scheduled for a date no earlier than 110 days after the entry of the Preliminary Approval Order (as defined in Section 1.33.)

1.21. "Final Approval Order and Judgment" or "Final Approval Order" shall mean a final order entered by the Court after the Final Approval Hearing, substantially the same in all material respects to that attached hereto as **Exhibit A**, granting its approval of the Settlement. The Parties may agree to additions or modifications to the form of the Final Approval Order and Judgment as they agree are appropriate at the time that it is submitted to the Court for final approval of the Settlement.

1.22. "Financial Institution" shall mean the institution at which the Escrow Account is established, which is Bank of America, N.A.

1.23. "Former Participant" shall mean any Monetary Relief Class Member that maintained a balance in the Plan after February 6, 2009, but who is not carrying a balance in the Plan on the Distribution Date.

1.24. "Independent Fiduciary" shall mean the qualified and experienced independent fiduciary that the Company selects to independently review the Settlement (as defined in Section 1.36) on behalf of the Settlement Classes.

1.25. "Independent Fiduciary Fees" shall mean the reasonable fees and expenses of the Independent Fiduciary. The Independent Fiduciary Fees shall be payable from the Settlement Fund after such funds are deposited with the Escrow Agent and upon receipt of an invoice from the Independent Fiduciary.

1.26. "Notice" shall mean the notice, identical in all material respects to that attached hereto as **Exhibit B**, to be provided directly to Settlement Class Members (as defined in Section

4

1.40) pursuant to Section 2.10 and made available on the Settlement Website (as defined in Section 1.42) and the website of Class Counsel.

1.27. "Monetary Relief Class" shall have the meaning ascribed to it in Section 2.2(b).

1.28. "Monetary Relief Class Member(s)" shall mean any plan participant who is a member of the Monetary Relief Class or any person acting or claiming to act on behalf of such a class member.

1.29. "Parties" shall mean Plaintiffs (as defined in Section 1.30), the Settlement Classes as defined in Section 1.39), and the Defendants.

1.30. "Plaintiffs" shall mean plaintiffs Lequita Dennard, John Gulo, Terrance LaVela, Kathryn A. Sedlacek, Henry D. Schmoll, and Philip A. Kramer.

1.31. "Plan" shall mean the Transamerica 401(k) Retirement Savings Plan (formerly the Aegon Companies Profit Sharing Plan).

1.32. "Plan of Allocation" shall mean the plan or formula of allocation of the Distributable Settlement Amount as approved by the Court, which plan or formula shall govern the distribution of the Distributable Settlement Amount, in the form attached hereto as **Exhibit C**. Notwithstanding any other provision of this Agreement, any revisions by the Court or any appellate court or otherwise relating solely to the Plan of Allocation shall not operate to terminate or cancel or otherwise affect this Agreement, provided that any such revisions do not require the Company, or its affiliates, to incur additional expenses and costs to provide data not already readily available on their computer systems.

1.33. "Preliminary Approval Order" shall mean an order entered by the Court preliminarily approving the Settlement, pursuant to Section 2.2 below, that is substantially the same in all material respects to that attached hereto as **Exhibit D**.

1.34. "Regulatory Change" shall have the meaning ascribed to it in Section 3.10(b).

1.35. "Released Claims" shall be any and all claims for monetary, injunctive and all other relief against Defendants Transamerica Corporation, Transamerica Financial Life

Insurance Company, Transamerica Retirement Solutions LLC,[1] Kirk Buese, Ralph Arnold, Ken Klinger, Mary Taiber, and Diane Meiners, as well as all other Defendant Released Parties arising out of or related to the conduct alleged in the plaintiffs' operative complaint, whether or not included as counts in the complaint, except that the Released Claims shall not include claims to enforce the covenants or obligations set forth in this Agreement, nor do they include, and this Agreement does not in any way bar, limit, waive, or release, any individual claim by the Plaintiffs or a Settlement Class Member to vested benefits that are otherwise due under the terms of the Plan. With respect to the Released Claims, it is the intention of the Parties and all other Settlement Class Members and the Plan expressly to waive to the fullest extent of the law: (a) the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides that "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor"; and (b) the provisions, rights and benefits of any similar statute or common law of any other jurisdiction that may be, or may be asserted to be, applicable.

1.36. "Settlement" shall mean the compromise and Settlement embodied in this Agreement.

1.37. "Settlement Administrator" shall mean KCC Class Action Services, LLC.

1.38. "Settlement Amount" shall mean three million eight hundred thousand dollars ($3,800,000).

1.39. "Settlement Classes" shall mean the classes composed of members of the Structural Changes Class and Monetary Relief Class (as defined in Sections 2.2(a) and 2.2(b), respectively).

1.40. "Settlement Class Member" shall mean a member of either or both of the Settlement Classes.

1.41. "Settlement Fund" shall have the meaning set forth in Section 3.1(b).

---

[1] Formerly Transamerica Retirement Solutions Corporation.

6

1.42.    "Settlement Website" shall have the meaning ascribed to it in Section 2.12.

1.43.    "Structural Changes" shall mean the changes set forth in Sections 3.1 through 3.9.

1.44.    "Structural Changes Class" shall have the meaning ascribed to it in Section 2.2(a).

1.45.    "Structural Changes Class Member(s)" shall mean any plan participant who is a member of the Structural Changes Class or any person acting or claiming to act on behalf of such a member.

1.46.    "Taxes" shall have the meaning ascribed to it in Section 4.1(i).

1.47.    "Tax-Related Costs" shall have the meaning ascribed to it in Section 4.1(i).

1.48.    "Unknown Claims" shall mean any Released Claims that Plaintiffs, any Settlement Class Member(s) and/or any of the other Parties do not know or suspect to exist in their favor at the time of the release of the Defendant Released Parties, including claims which, if known by them, might have affected their settlement with and release of the Defendant Released Parties, or might have affected their decision not to object to this Settlement.  Plaintiffs, any Monetary Relief Class Member, and any of the other Parties may later discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims, but Plaintiffs, any Monetary Relief Class Member and all of the other Parties, upon the Effective Date, shall be deemed to have, and by operation of the Final Approval Order and Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  Plaintiffs, any Monetary Relief Class Member and all of the other Parties shall be deemed by operation of the Final Approval Order and Judgment to have acknowledged that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

7

## II.   CONDITIONS TO FINALITY OF THE SETTLEMENT

This Settlement shall be contingent upon each of the following conditions in Section 2.1 to 2.15 being satisfied.  The Parties agree that if any of these conditions is not satisfied, then this Agreement shall be terminated and the Action will for all purposes with respect to the Parties revert to its status as of January 21, 2016.  In such event, Defendants will not be deemed to have consented to class certification as described in Section 2.2, the agreements and stipulations in this Agreement concerning class certification shall not be used as evidence or argument to support class certification, and the Defendants will retain all rights with respect to class certification.

2.1.   *Court Approval of Settlement.*  The Settlement shall have been approved by the Court, as provided for in this Section II.  The Parties shall cooperate in good faith to allow Plaintiffs to seek Court approval.

2.2.   *Motion for Preliminary Approval and Certification of Settlement Classes.*  As soon as is practicable after execution of this Agreement, Plaintiffs shall move the Court (i) for preliminary approval of the Settlement, including entry of an order identical in all material respects to the form of the Preliminary Approval Order, and (ii) for purposes of this Settlement only, conditional certification of the following two Settlement Classes:

> (a)   **The Structural Changes Class:**  The Structural Changes Class will consist of all participants in the Plan on or after the date of entry of the Preliminary Approval Order.

> (b)   **The Monetary Relief Class:**  The "Monetary Relief Class" will consist of all Current and Former Participants in the Plan who maintained a balance of any amount in the Plan at any point during the period from February 6, 2009 to the date of entry of the Preliminary Approval Order.

Defendants will not object to Plaintiffs' motion for preliminary approval and class certification. Defendants are excluded from the Monetary Relief Class.

2.3.   *Basis for Certification of Settlement Classes.*  Plaintiffs will seek certification of the Structural Changes Class under Federal Rule of Civil Procedure 23(b)(2) and will seek certification of the Monetary Relief Class under Federal Rule of Civil Procedure 23(b)(1).

8

2.4.    ***Certification for Settlement Purposes Only.***  Plaintiffs' motion for class certification shall be for the limited purpose of effectuating this Agreement only.  Defendants shall not take any position with respect to Plaintiffs' request for certification of the Settlement Classes only, but reserve all rights to object to the propriety of class certification in the Action in all other contexts and for all other purposes.

2.5.    ***The Final Approval Hearing.***  On or after the date set by the Court for the Final Approval Hearing pursuant to Federal Rule of Civil Procedure 23(e)(2), the Court will determine (i) whether to enter a judgment finally approving the Settlement; and (ii) what, if any, legal fees, compensation, and expenses should be awarded to Plaintiffs and/or Class Counsel as contemplated by Sections 8.1 to 8.2 of this Agreement.

2.6.    ***Entry of Judgment.***  This agreement is contingent on the Court entering judgment in a form substantially similar to the form attached hereto as **Exhibit A**.

2.7.    ***Funding of the Settlement Amount.***  The Company shall cause the Settlement Amount to be deposited to the Settlement Fund and/or allocated to the Monetary Relief Class Members at the time(s) prescribed by and otherwise as provided for in Sections 4.1 and 4.2.

2.8.    ***Vacating Settlement Certification and Reservation of Rights.***  The certification of the Settlement Classes shall be binding only with respect to the Settlement of the Action.  If this Agreement is terminated, or is reversed, vacated, or modified in any material respect by the Court or any other court, the certification of the Settlement Classes shall be vacated, the Action shall proceed as though the Settlement Classes had never been certified, and no reference to the prior Settlement Classes or any documents related thereto shall be made for any purpose.

2.9.    ***Settlement Authorized by Independent Fiduciary***

(a)    The Company will, in its sole discretion, select an Independent Fiduciary to review the settlement and provide any necessary authorizations, including the authorization required by Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632 (Dec. 31, 2003), as amended by 75 Fed. Reg. 33830 (June 15, 2010). All fees charged by the Independent Fiduciary for its service, together with all

9

costs reasonably borne by the Independent Fiduciary that are chargeable under the agreement with the Independent Fiduciary, shall be paid out of the Settlement Fund, to the extent these fees and costs do not exceed $40,000. If these fees and costs exceed $40,000, they shall be borne first out of funds remaining in the Settlement Fund as a result of any uncashed checks, and then by the Company out of its own assets.

(b)     At least thirty (30) days prior to the Final Approval Hearing, the Independent Fiduciary shall have approved and authorized in writing the Settlement, and given a release in its capacity as fiduciary of the Plan for and on behalf of the Plan, on the terms set forth in Section 6.1, in accordance with Prohibited Transaction Class Exemption 2003-39. If the Independent Fiduciary disapproves or otherwise does not authorize the Settlement or refuses to execute the release on behalf of the Plan, then the Company, at its sole election, shall be entitled to terminate the Agreement. Alternatively, the Company shall have the option to waive this condition if so stipulated by the Parties. Either option is to be exercised in writing within the earlier of: (i) ten (10) days after the Parties' receipt of the Independent Fiduciary's written determination or (ii) three (3) days prior to the date set for the Final Approval Hearing, unless otherwise agreed by the Parties. The Parties shall comply with reasonable requests for information made by the Independent Fiduciary.

2.10.   *Class Notice*

(a)     Within thirty (30) days of the entry of the Preliminary Approval Order, the Settlement Administrator shall send the Notice by first-class mail or electronic mail (if available) to the Settlement Class Members. The Notice will be sent to the last known electronic mail address (if any) or last known mailing address of the Settlement Class Members, which mailing address will be supplied by the Company and updated through the National Change of Address database by the

Settlement Administrator before mailing (with all returned mail skip-traced and promptly re-mailed), and will be in the form attached hereto as **Exhibit B**.

(b)     The Settlement Administrator will make payment of the Distributable Settlement Amount to each Monetary Relief Class Member.  For each Current Participant in the Plan, the payment will be credited to the participant's account. For each Former Participant, the payment will be made in the form of a check mailed to the current address maintained by the Settlement Administrator.

2.11.   ***Class Action Fairness Act Notice.***  The Settlement Administrator shall comply with the notice requirements of 28 U.S.C. § 1715 and shall file a notice confirming compliance prior to the Final Approval Hearing.

2.12.   ***Settlement Website.***  Within thirty (30) days of the entry of the Preliminary Approval Order and no later than the first date that the mailing of the Notice occurs, the Settlement Administrator shall establish the Settlement Website, which will contain the Notice, this Agreement and its exhibits.  The Notice, attached hereto as **Exhibit B**, will identify the web address of the Settlement Website.

2.13.   ***Settlement Information Line.***  Within thirty (30) days of the entry of the Preliminary Approval Order and no later than the first date that the mailing of the Notice occurs, the Settlement Administrator shall establish a toll-free telephone number to which Settlement Class Members can direct questions about the Settlement.  The Settlement Administrator shall develop a question-and-answer-type script, with input and approval from Defendants' Counsel and Class Counsel, for the use of persons who answer calls to this line.

2.14.   ***Rights of Exclusion.***  Neither Monetary Relief Class Members nor Structural Changes Class Members shall be permitted to exclude themselves from the Monetary Relief Class or the Structural Changes Class, respectively.

2.15.   ***Right to Object.***  Members of the Settlement Classes shall be permitted to object to the Settlement.  Requirements for filing an objection shall be as set forth in the Preliminary Approval Order.

### III.  STRUCTURAL CHANGES

3.1.  ***Changes to Plan Practices.***  As part of the Settlement of this Action, Defendants agree to make, for a specified period, certain specified changes to the practices affecting the Plan as set forth in the remaining Sections of this Section III, unless there is a change in applicable law that renders any change or practice unlawful (in which case Defendants shall be permitted to alter these practices to the extent (but only to the extent) required by law).  It is understood and agreed by the Parties that by making the changes described in Section III, Defendants do not agree with or in any way admit, and shall not be deemed to agree with or in any way admit, any theories of Plaintiffs or Class Counsel regarding Defendants' liability in the Action, including, without limitation, that any of Defendants' prior or existing practices violate any federal or state laws, statutes, or regulations.  Defendants agree to make the changes described in Section III solely to resolve disputes and provide agreed clarity on a going-forward basis as to the propriety of their future conduct.  In exchange for Defendants' agreement to the structural changes in Section 3.2–3.9, the Structural Changes Class Members agree to the covenants not to sue set forth in Section 6.2.

3.2.  ***Limitation on Plan's Total Fees***.  For the shorter of the duration of the Compliance Period, or as long as the Plan invests in any of the TFLIC Pooled Separate Accounts that invest in TAM-advised Registered Investment Companies, the total fees charged for the Plan's investments in such Pooled Separate Accounts (inclusive of fees collected from the TFLIC Pooled Separate Accounts and fees and expenses charged in connection with the management of  the underlying TAM-advised Registered Investment Companies) shall not exceed those in effect as of December 31, 2015, as set forth in **Exhibit E** hereto.

3.3.  ***Changes to Investment Lineup.***

(a)  For the duration of the Compliance Period, the Plan's trustees will add a third-party, low-fee bond index mutual fund to the Plan's investment lineup, with fees not to exceed seven (7) basis points per annum.  This provision is subject to the availability of suitable such products in the market.

12

(b)     For the duration of the Compliance Period, the Plan's trustees will maintain an S&P 500 index mutual fund option with an expense ratio not to exceed two (2) basis points per annum.  This provision is subject to the availability of suitable such products in the market.

3.4.    ***Unaffiliated Investment Consultant.***  For the duration of the Compliance Period, the Plan will continue to retain the services of an unaffiliated investment consultant to provide an annual evaluation of the Plan's investment lineup and brokerage window arrangements.

3.5.    ***Revision of the Summary Plan Description.***  The Plan's trustees shall revise the Summary Plan Description to delineate the investment structures of the Plan and to detail the funds used in the Portfolio Xpress Qualified Default Investment Alternative.

3.6.    ***Rebate of Mutual Fund Revenue Sharing.***  For the duration of the Compliance Period, the Company will continue to rebate all mutual fund revenue sharing to the Plan as a plan service credit.

3.7.    ***Rebate of Affiliated Sub-Advisor Fees.***  For the duration of the Compliance period, the Company will continue to rebate any sub-advisor fees for affiliated sub-advisors to the Plan as a plan service credit.

3.8.    ***No Charge for Recordkeeping Services.***  For the duration of the Compliance Period, the Company will continue to provide recordkeeping services to the Plan at no cost.

3.9.    ***Maintenance of Brokerage Window.***  For the duration of the Compliance Period, the Company will continue to offer participants access to a wide range of non-affiliated mutual fund investments through a brokerage window.

3.10.   ***Impact of Regulatory Changes.***

(a)     Notwithstanding anything in this Section III to the contrary, Defendants shall not be required to comply with any provision of this Section III should any change in applicable law render such compliance unlawful or unreasonably burdensome or prohibitively expensive.

13

(b)    Notwithstanding anything in this Section III to the contrary, Defendants shall have the right, at their sole option, to modify any of the contractual, disclosure or other changes described in Section III if Congress, the Department of Labor, or any other applicable regulatory or self-regulatory body imposes different substantive requirements, whether through statute, regulation, guidance, or otherwise a ("Regulatory Change"); provided, however, that, in the event of a Regulatory Change that affects only certain of the provisions of this Section III, Defendants shall be required to continue to comply with all other provisions of Section III that are not affected by the Regulatory Change.  In the event of a Regulatory Change, Defendants' compliance with the new regulatory requirements and/or guidance shall be deemed compliant with the terms of this Agreement.

3.11.    Defendants shall complete the implementation of the Structural Changes within 90 days of the Effective Date, or by March 31, 2017, whichever is later.  Defendants shall file a notice with the Court within 30 days of implementing the Structural Changes attesting that they have implemented the Structural Changes.

## IV.    PAYMENTS TO THE MONETARY RELIEF CLASS

4.1.    *The Settlement Amount.*

(a)    In consideration of all the promises and agreements set forth in this Agreement, the Company will pay the Settlement Amount.  No other of the Defendant Released Parties shall have any obligation to contribute financially to this Settlement.

(b)    The Company shall pay the Settlement Amount in two segments, and this funding shall constitute the Settlement Fund.  First, the Company shall cause five hundred thousand dollars ($500,000) of the Settlement Amount to be deposited by wire transfer into the Escrow Account within fifteen (15) days of the entry of the Preliminary Approval to fund any Administrative Costs that arise before the Effective Date.  Second, the Company shall cause the remaining three million and three hundred thousand dollars

14

($3,300,000) of the Settlement Amount to be deposited by wire transfer into the Escrow Account within fifteen (15) days following the Effective Date.

(c)    The Settlement Amount shall be used solely for the purposes set forth in Section 4.1(j) below.

(d)    Subject to Court approval and oversight, the Escrow Account will be controlled by the Settlement Administrator.  Neither Defendants nor Plaintiffs shall have any liability whatsoever for the acts or omissions of the Settlement Administrator appointed by the Court.  The Settlement Administrator shall not disburse the Settlement Amount or any portion thereof except as provided for in this Agreement, by an Order of the Court, or with prior written agreement of Class Counsel and Defendants' Counsel.

(e)    The Settlement Administrator is authorized to execute transactions on behalf of the Monetary Relief Class Members that are consistent with the terms of this Agreement and with Orders of the Court.

(f)    All funds held in the Escrow Account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until the funds are distributed in accordance with this Agreement.

(g)    The Settlement Administrator shall, to the extent practicable, invest the Settlement Amount in discrete and identifiable instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then current market rates.  The Settlement Administrator shall maintain records identifying in detail each instrument in which the Settlement Amount or any portion thereof has been invested, and identifying the precise location (including safe deposit box number) of each such instrument.  Neither the Settlement Amount nor any portion thereof shall be commingled with any other monies in any instruments.  Any cash portion of the Settlement Amount not invested in instruments of the type described in the first sentence of this Section shall be maintained by the

15

Settlement Administrator, and not commingled with any other monies, at a bank account, which shall promptly be identified to the Parties at either party's request by account number and any other identifying information. The Settlement Administrator and Monetary Relief Class Members shall bear all risks related to investment of the Settlement Amount.

(h)     The Escrow Account is intended to be a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1. The Settlement Administrator, as administrator of the Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing tax returns for the Escrow Account and paying from the Escrow Account any Taxes owed with respect to the Escrow Account. Defendants agree to provide the Settlement Administrator with the statement described in Treasury Regulation §1.468B-3(e). Neither Defendants, Defendants' Counsel, Plaintiffs, nor Class Counsel shall have any liability or responsibility of any sort for filing any tax returns or paying any taxes with respect to the Escrow Account.

(i)     All (i) taxes on the income of the Escrow Account ("Taxes") and (ii) expenses and costs incurred in connection with the taxation of the Escrow Account (including, without limitation, expenses of tax attorneys and accountants) ("Tax-Related Costs") shall be timely paid by the Settlement Administrator out of the Escrow Account.

(j)     The Settlement Amount, together with any interest accrued thereon, will be used to pay the following amounts associated with the Settlement:

    (1)     Compensation to Monetary Relief Class Members determined in accordance with Section 4.2;

    (2)     Any Case Contribution Award approved by the Court;

    (3)     All Attorneys' Fees and Expenses approved by the Court;

16

(4) Independent Fiduciary Fees and Costs (up to $40,000, plus amounts remaining from uncashed checks to Monetary Relief Class Members);

(5) Administration Costs; and

(6) Taxes and Tax-Related Costs

4.2. ***Distribution to Monetary Relief Class Members.***

(a) After withdrawal of Class Counsel's Attorneys' Fees and Expenses approved by the Court, Administration Costs (including an estimated provision for the costs of the distribution to Monetary Relief Class Members and other post-distribution related Administration Costs, as proposed by the Settlement Administrator and approved by Class Counsel and Defendants' Counsel as reasonable), Independent Fiduciary Fees and Costs, Case Contribution Awards, and Taxes and Tax-Related Costs, the money remaining in the Settlement Fund, including any interest thereon (the "Distributable Settlement Amount") will be distributed to Monetary Relief Class Members.

(b) The Distributable Settlement Amount will be distributed to Monetary Relief Class Members as described in the Plan of Allocation attached hereto as **Exhibit C** or such other allocation plan as may be ordered by the Court. It is understood and agreed by the Parties that the proposed Plan of Allocation is not part of this Agreement and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Agreement or affect the finality of the Court's Final Approval Order and Judgment approving the Settlement or any other Orders entered pursuant to the Agreement. Notwithstanding the foregoing, or anything else in this Agreement, any revisions to the Plan of Allocation that would require the Company or its affiliates to incur additional expenses or costs or to provide data not already readily available on its computer systems shall be deemed a material

17

alteration of this Agreement and entitle the Company, at its election, to terminate the Agreement.

(c)     The Settlement Administrator shall disburse the Distributable Settlement Amount on the Distribution Date.

(d)     No payment to any Monetary Relief Class Member shall be smaller than ten dollars ($10.00). Any Monetary Relief Class Member whose payment pursuant to Section 4.2(b) is less than ten dollars ($10.00) shall receive a payment of ten dollars ($10.00).

(e)     Current Participants will be paid by electronic distribution to their plan accounts. Former Participants will be paid by check. Former Participants must cash those checks within ninety (90) days of issuance. If they do not do so, the checks will be void, and the Settlement Administrator shall be instructed to return any such funds to the Settlement Fund. This limitation shall be printed on the face of each check. The voidance of checks shall have no effect on the Monetary Relief Class Members' release of claims, obligations, representations, or warranties as provided herein, which shall remain in full effect.

(f)     To the extent funds remain in the Settlement Fund as a result of any uncashed checks by Former Participants, such funds will first be used to pay any Independent Fiduciary Fees exceeding $40,000. The remainder of the Settlement Fund, to the extent it exceeds $5,000, will be electronically distributed to Monetary Relief Class Members who, at the time of this distribution (if any), maintain a balance in the Plan. To the extent the remainder in the Settlement Fund is less than $5,000, the remainder will be electronically deposited in the Plan's suspense account.

4.3.     ***Responsibility for Taxes on Distribution.*** Each Monetary Relief Class Member who receives a payment under this Agreement shall be fully and ultimately responsible for payment of any and all federal, state or local taxes resulting from or attributable to the payment received by such person. Each Monetary Relief Class Member shall hold Defendants,

18

Defendants' Counsel, the Defendant Released Parties, Class Counsel, and the Settlement Administrator harmless from any tax liability, including penalties and interest, related in any way to payments or credits under the Agreement, and shall hold Defendants, Defendants' Counsel, the Defendant Released Parties, Class Counsel, and the Settlement Administrator harmless from the costs (including, for example, attorneys' fees and disbursements) of any proceedings (including, for example, investigation and suit), related to such tax liability.

4.4.    ***Treatment of Undistributed Funds and Uncashed Checks.***  Any funds associated with checks that are not cashed within ninety (90) days of issuance and any funds that cannot be distributed to Monetary Relief Class Members for any other reason, together with any interest earned on them, and after the payment of any applicable taxes by the Escrow Agent, shall be returned to the Settlement Fund by the Settlement Administrator to be distributed as described in Section 4.2(f).

4.5.    ***Administration Costs.***  The Administration Costs shall be paid from the Settlement Amount.  The Settlement Administrator will reserve from the Settlement Amount its estimated costs of completing settlement administration activities, including the costs of distributing the Distributable Settlement Amount to Monetary Relief Class Members as described in Section 4.2.  Beginning thirty (30) days after the entry of the Preliminary Approval Order, and on every thirty (30) days thereafter, the Settlement Administrator shall provide the Parties with a detailed accounting of any Administration Costs expended to date and an invoice for the amount of such Administration Costs.  Any disputes as to whether amounts billed by the Settlement Administrator are reasonable and necessary under this Agreement shall be resolved by the Court.

4.6.    ***Entire Monetary Obligation.***  Notwithstanding anything else in this Agreement (except with respect to any obligations it may be required to incur with respect to implementation of the structural changes described in Section III, and with respect to Independent Fiduciary Fees and costs in excess of $40,000, to the extent not covered by uncashed checks to Monetary Relief Class Members), in no event shall Defendants be required

19

to pay any amounts other than the Settlement Amount. It is understood and agreed that Defendants' monetary obligations under this Settlement Agreement will be fully discharged by paying the amount specified in Sections 1.38 and 4.1(a) above, and that Defendants shall have no other monetary obligations, or obligations to make any other payments under this Agreement or otherwise.

## V.    <u>SETTLEMENT ADMINISTRATION</u>

5.1.    Within fourteen (14) days of the entry of the Preliminary Approval Order, Defendants shall provide to the Settlement Administrator the participant data sufficient to effectuate class notice, implement the Plan of Allocation, and distribute the settlement proceeds.

5.2.    The Settlement Administrator shall administer the Settlement subject to the supervision of Class Counsel, Defendants' Counsel, and the Court as circumstances may require.

5.3.    Defendants and Defendants' Counsel shall have no responsibility for, interest in, or liability whatsoever, with respect to:

        (a)    any act, omission or determination of the Settlement Administrator, Class Counsel, or designees or agents of Class Counsel or the Settlement Administrator;

        (b)    any act, omission or determination of Class Counsel or their designees or agents in connection with the administration of the Settlement;

        (c)    the management, investment, or distribution of the Settlement Amount or the Distributable Settlement Amount; or

        (d)    the determination, administration, calculation, or payment of any claims asserted against the Settlement Amount or the Distributable Settlement Amount.

5.4.    The Settlement Administrator shall provide to Class Counsel and Defendants' Counsel, no less frequently than monthly, a full accounting of all expenditures made in connection with the Settlement, including Administration Costs, and any distributions from the Settlement Amount.

5.5.    The Settlement Administrator shall provide such information as may be reasonably requested by Plaintiffs or Defendants relating to administration of this Agreement.

## VI.  RELEASES, COVENANTS AND JUDICIAL FINDINGS

6.1.  ***Release of Defendants and Defendant Released Parties.***  Subject to Section IX below, upon the Effective Date, Plaintiffs, each Settlement Class Member (on behalf of themselves, their current and former beneficiaries, their representatives and successors-in-interest), and the Plan (by and through the Independent Fiduciary pursuant to Section 2.9) absolutely and unconditionally release and forever discharge all Released Claims.

6.2.  ***Covenant Not to Sue.***  The Parties recognize that the changes to the practices affecting the Plan that are described in Sections 3.2–3.9 above, as well as the monetary relief paid to the Plan described in Sections 4.1–4.6 above, are designed to benefit the Monetary Relief Class Members and Structural Changes Class Members, and to eliminate any potential future controversies over the matters involved in this Action.  In order to ensure that these practices affecting the Plan are not subject to future potentially inconsistent challenges or standards, and in consideration for the Company's willingness to conform its conduct to the terms of this Settlement, the Monetary Relief Class Members and the Structural Changes Class Members agree that, for the duration of the Compliance Period, none of them will institute, maintain, prosecute, sue, or assert in any action or proceeding any claim, based on conduct subsequent to, or any liability or damages claimed to arise or occur after, the date of Preliminary Approval, with respect to any of the conduct or practices this agreement requires Defendants to undertake (the "Covenant Not to Sue").

6.3.  ***Releases of Plaintiffs, the Plan, the Settlement Class, and Class Counsel.***  Upon the Effective Date, the Company (on behalf of itself and its representatives and successors-in-interest) shall be deemed to have, and by operation of the Judgment, shall have, fully, finally, and forever released, relinquished, and discharged, and shall forever be enjoined from prosecution of Plaintiffs, the Plan, the Settlement Classes, and Class Counsel from any and all actual or potential claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees and costs, whether under local, state or federal law, whether by statute, contract, common law or equity, whether brought in an individual, representative or any other capacity, whether

21

known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, in connection with the Action.

6.4.    ***Taxation of Class Settlement Amount.***  Plaintiffs acknowledge that the Defendant Released Parties have no responsibility for any taxes due on funds deposited in or distributed from the Settlement Fund or that Plaintiffs or Class Counsel receive from the Settlement Amount.

6.5.    ***Access to Company Information***.  The Company shall, upon request of the Settlement Administrator and a reasonable period before the issuance of the Notice, produce to the Settlement Administrator the Settlement Class Members' names and last known addresses as they appear in the Company's records, and the average year-end account balances for each Monetary Relief Class Member for the purposes of providing the Notice required under Section 2.10 implementing the Plan of Allocation required under Section 4.2.  The Company shall not be otherwise obligated to assist with communications to the Settlement Class Members or distributions to former Plan participants.

6.6.    ***Use of Settlement Administrator Information.***  Both sides shall have equal access to information held by the Settlement Administrator given that such information is necessary to administer this Settlement consistent with Class Counsel's obligation to do so; however, such information shall be kept in strict confidence by Class Counsel.

6.7.    ***Use of Company Information.***  Class Counsel and their agents shall use any information provided by the Company pursuant to the express provisions of this Agreement solely for the purpose of providing the Notice and administering this Settlement and for no other purpose.

## VII.    <u>REPRESENTATIONS AND WARRANTIES</u>

7.1.    ***Settling Parties' Representations and Warranties.***  The Parties, and each of them, represent and warrant as follows, and each settling Party acknowledges that each other Party is relying on these representations and warranties in entering into this Settlement Agreement:

22

(a)     That they have diligently investigated the claims in this Action; that they are voluntarily entering into this Agreement as a result of arm's-length negotiations among their counsel; that in executing this Agreement they are relying solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently-selected counsel, concerning the nature, extent and duration of their rights and Claims hereunder and regarding all matters which relate in any way to the subject matter hereof; and that, except as provided in this Agreement, they have not been influenced to any extent whatsoever in executing this Agreement by any representations, statements, or omissions pertaining to any of the foregoing matters by any Party or by any person representing any Settling Party.  Each Party assumes the risk of mistake as to facts or law.

(b)     That they have carefully read the contents of this Agreement and this Agreement is signed freely by each person executing the Agreement on behalf of each of the Parties.  The Parties, and each of them, further represent and warrant to each other that he, she, or it has made such investigation of the facts pertaining to this Settlement, this Agreement, and all of the matters pertaining thereto, as he, she or it deems necessary.

7.2.    ***Signatories' Representations and Warranties.***  Each person executing this Agreement on behalf of any other person does hereby personally represent and warrant that he or she has the authority to execute this Agreement on behalf of, and fully bind, each principal whom such individual represents or purports to represent and that no right or claim compromised pursuant to this Agreement has been assigned or hypothecated to any third party.

## VIII.  <u>MONETARY PAYMENTS</u>

8.1.    ***Case Contribution Award***

(a)     Each Plaintiff intends to seek a Case Contribution Award not to exceed the amount of six thousand dollars ($6,000.00) per Plaintiff, which shall be subject to Court approval (the "Case Contribution Award").  Defendants shall not oppose Case Contribution Awards up to that amount.  Any Case Contribution Award approved by the

Court shall be paid within thirty (30) days of the Effective Date. The Case Contribution Award shall be paid by the Settlement Administrator solely out of the Settlement Amount and shall be deducted (to the extent approved by the Court) from the Settlement Amount on or after the Effective Date and prior to the distribution to the Monetary Relief Class Members. Plaintiffs shall also be entitled to further distribution under this Settlement pursuant to Section 4.2 as Monetary Relief Class Members.

(b)      Notwithstanding any other provision of this Agreement to the contrary, the procedure for and the allowance or disallowance (in whole or in part) by the Court of any application for the Case Contribution Award shall be considered by the Court separately from its consideration of the fairness, reasonableness, and adequacy of the Settlement, and any Order or proceedings relating to the Case Contribution Award, or any appeal of any Order relating thereto, shall not operate to terminate or cancel this Agreement or be deemed material thereto.

(c)      Defendants shall have no obligations whatsoever with respect to any Case Contribution Award to Plaintiffs, which shall be payable solely out of the Settlement Amount.

8.2.    ***Attorneys' Fees and Expenses***

(a)      Class Counsel intends to submit a Fee and Expense Application, seeking an award of Attorneys' Fees and Expenses not exceeding one-third of the Settlement Fund, plus costs. Defendants shall not oppose an Attorneys' Fees and Expenses award up to that amount. Any amount awarded by the Court in response to such Fee and Expense Application shall be paid by the Settlement Administrator solely out of the Settlement Amount and shall be deducted (to the extent approved by the Court) from the Settlement Amount and paid to Class Counsel within fourteen (14) days of the Effective Date.

(b)      Notwithstanding any other provision of this Agreement to the contrary, the procedure for and the allowance or disallowance (in whole or in part) by the Court of the Fee and Expense Application to be paid out of the Settlement Amount shall be considered

24

by the Court separately from its consideration of the fairness, reasonableness, and adequacy of the Settlement, and any Order or proceedings relating to the award of Attorneys' Fees, or any appeal of any Order relating thereto, shall not operate to terminate or cancel this Agreement or be deemed material thereto.

(c)     Defendants shall have no obligations whatsoever with respect to any attorneys' fees or expenses incurred by Class Counsel, which shall be payable solely out of the Settlement Amount.

## IX.     CONTINGENCIES, EFFECT OF DISAPPROVAL OR TERMINATION OF SETTLEMENT

9.1.     If the Court or, in the event of an appeal, any appellate court refuses to approve, or modifies any material aspect of this Agreement or the proposed Preliminary Approval Order or Final Approval Order and Judgment, including, but not limited to any judicial findings included therein, Plaintiffs or Defendants may terminate this Agreement and the Settlement as set forth below.

9.2.     This Agreement and the Settlement shall terminate and be cancelled if, within ten (10) business days after any of the following events, one of the Parties provides written notification of an election to terminate the Settlement:

(a)     The Court declines to provide preliminary approval of this Agreement, or declines to enter or materially modifies the contents of the Preliminary Approval Order attached hereto as **Exhibit D**, or the Preliminary Approval Order is vacated, reversed or modified in any material respect on any appeal or other review or in a collateral proceeding occurring prior to the Effective Date;

(b)     The Court declines to provide final approval of this Agreement, or declines to enter or materially modifies the contents of the Final Approval Order and Judgment attached hereto as **Exhibit A**;

(c)     The Court's Final Approval Order and Judgment is vacated, reversed or modified in any material respect on any appeal or other review or in a collateral proceeding occurring prior to the Effective Date; or

(d)     The Effective Date does not occur for some other reason.

9.3.     For purposes of this Agreement and this Section 9.3, no Order of the Court, or modification or reversal on appeal of any Order of the Court, solely concerning the Plan of Allocation, the administration of the Settlement or the persons performing such administrative functions, or the amount, advancement or award of any Attorneys' Fees and Expenses or Case Contribution Award shall constitute grounds for cancellation or termination of the Agreement.

9.4.     This Agreement shall terminate if and when any of the conditions specified in Section II is not satisfied.

9.5.     This Agreement and the Settlement shall terminate and be cancelled if (a) any federal or state authorities object to or request material modifications to the Agreement; and (b) within ten (10) business days after the deadline set in the Preliminary Approval Order for such objections or requests, or within ten (10) business days of receiving any such objection or request, if later, Defendants provide written notice of their election to terminate the Settlement.

9.6.      If for any reason this Agreement is terminated or fails to become effective, then:

(a)     The Settling Parties shall be deemed to have reverted to their respective status in the Action as of January 21, 2016, which shall then resume proceedings in the Court, and, except as otherwise expressly provided in this Agreement, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered.

(b)     Class Counsel and Defendants' Counsel shall within ten (10) days after the date of termination of the Agreement jointly notify the Financial Institution in writing to return to the Company, or its designee, the full amount contained in the Settlement Fund, with all net income earned thereon, after deduction of any amounts earlier disbursed and/or incurred by the Settlement Fund as of the termination, and direct the Financial Institution to effect such return within fourteen (14) days after such

26

notification. Prior to the return of amounts contemplated by this Section 9.6(b), the Financial Institution shall fully and finally fulfill and set aside for any and all tax obligations of the Settlement Fund as set forth in Section 4.1(i) and the Company shall have no past, present, or future liability whatsoever for any such tax obligations.

(c)     This Section IX and its provisions shall survive any termination of this Settlement.

## X.     NO ADMISSION OF WRONGDOING

10.1.    The Parties understand and agree that this Agreement embodies a compromise settlement of disputed claims, and that nothing in this Agreement, including the furnishing of consideration for this Agreement, shall be deemed to constitute any finding or admission of any wrongdoing or liability by any of the Defendants, or give rise to any inference of wrongdoing or liability in the Action or any other proceeding. This Agreement and the consideration provided hereunder are made in compromise of disputed claims and are not admissions of any liability of any kind, whether legal or factual. The Defendants specifically deny any such liability or wrongdoing and the Company states that it is entering into the Agreement solely to eliminate the burden and expense of further litigation. Further, Plaintiffs, while believing that all Claims brought in the Action have merit, have concluded that the terms of this Agreement are fair, reasonable, and adequate to the Plan, themselves and the Settlement Class Members given, among other things, the inherent risks, difficulties and delays in complex ERISA litigation such as the Action. Neither the fact nor the terms of this Agreement shall be used or offered or received in evidence in any action or proceeding for any purpose, except in an action or proceeding to enforce this Agreement or arising out of or relating to the Judgment.

## XI.    MISCELLANEOUS

11.1.    ***No Disparaging Statements***.  Defendants, Defendants' Counsel, Plaintiffs, and Class Counsel shall make no statements to the press or make any other public statements describing this Settlement that disparage any Party or accuse any Party of wrongdoing. The Parties will agree upon a joint statement to utilize in response to any inquiries from the press or

27

otherwise regarding this Settlement. Nothing in this Agreement shall be construed to prevent Plaintiffs and Class Counsel from freely and frankly communicating with the Settlement Class Members.

11.2. ***Waiver***. The provisions of this Agreement may be waived only by an instrument in writing executed by the waiving party. The waiver by any party of any breach of this Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

11.3. ***Dispute Resolution.*** If a dispute arises regarding compliance with any of the provisions of an approved and executed Agreement, before the dispute is presented to the Court it shall be mediated by Hunter R. Hughes (or by another mutually agreed mediator). The mediator shall make a non-binding decision regarding the dispute if such mediation efforts are unsuccessful. The cost of any mediation shall be split equally between Plaintiffs and Defendants.

11.4. ***Entire Agreement***. This Agreement is the entire agreement among the Parties and it supersedes any prior agreements, written or oral, between the Parties. This Agreement cannot be altered, modified or amended except through a writing executed by all Parties.

11.5. ***Construction of Agreement***. This Agreement shall be construed to effectuate the intent of the Parties to resolve all disputes encompassed by the Agreement. All Parties have participated in the drafting of this Agreement, and any ambiguity shall not be resolved by virtue of a presumption in favor of any Party. The Agreement was reached at arm's-length by the Parties represented by counsel. None of the Parties shall be considered to be the drafter of this Agreement or any provision hereof for the purposes of any statute, case law, or rule of interpretation or construction.

11.6. ***Principles of Interpretation***. The following principles of interpretation apply to this Agreement:

(a) The headings of this Agreement are for reference only and do not affect in any way the meaning or interpretation of this Agreement.

28

(b)    Definitions apply to the singular and plural forms of each term defined.

(c)    Definitions apply to the masculine, feminine, and neutral genders of each term defined.

(d)    References to a person are also to the person's permitted successors and assignees.

(e)    Whenever the words "include," "includes," or "including" are used in this Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

11.7.    ***Executed in Counterparts***.  This Agreement may be executed in counterparts, all of which shall be considered the same as if a single document had been executed, and shall become effective when such counterparts have been signed by each of the Parties and delivered to the other Party.  Counterpart copies of signature pages, whether delivered in original, by electronic mail in pdf format and/or by facsimile, taken together shall all be treated as originals and binding signatures.

11.8.    ***Notices***. Unless otherwise provided herein, any notice, request, instruction, application for Court approval, or application for Court Order sought in connection with the Agreement, shall be in writing and delivered personally or sent by certified mail or overnight delivery service, postage prepaid, with copies by facsimile or e-mail to the attention of Class Counsel or Defendants' Counsel (as well as to any other recipients that a court may specify). Parties may change the person(s) to whom such notices should be directed by giving notice pursuant to this Section.  As of the date hereof, the respective representatives are as follows:

> **For Defendants:**
>     **Brian D. Boyle**
>     O'Melveny & Myers LLP
>     1625 Eye Street, NW
>     Washington, D.C. 20006
>     Telephone:    (202) 383-5300
>     Facsimile:    (202) 383-5414
>     Email:        bboyle@omm.com

29

**For Plaintiffs:**
      **Gregory Y. Porter**
      Bailey & Glasser, LLP
      910 17th Street, NW
      Suite 800
      Washington, D.C. 20006
      Telephone:    (202) 463-2101
      Facsimile:    (202) 463-2103
      Email:        gporter@baileyglasser.com

11.9. *Extensions of Time*. The Parties may agree, subject to the approval of the Court where required, to reasonable extensions of time to carry out the provisions of the Agreement.

11.10. *Governing Law*. This Agreement shall be governed by and construed in accordance with the laws of Iowa without giving effect to any conflict of law provisions that would cause the application of the laws of any jurisdiction other than Iowa.

11.11. *Fees and Expenses*. Except as otherwise expressly set forth herein, each Party hereto shall pay all fees, costs and expenses incurred in connection with the Action, including fees, costs and expenses incident to his, her or its negotiation, preparation or compliance with this Agreement, and including any fees, expenses and disbursements of its counsel, accountants, and other advisors. Nothing in this Agreement shall require Defendants to pay any monies other than as expressly provided herein.

11.12. *Communication With Current Participants*. Nothing in this Agreement or Settlement shall prevent or inhibit the Company's ability to communicate with Current or Former Participants of the Plan. The Parties acknowledge and do not object to the fact that the Company intends to inform Settlement Class Members of this settlement prior to their receipt of notice under this Agreement.

11.13. *Retention of Jurisdiction.* The Parties shall request that the Court retain jurisdiction of this matter after the Effective Date and enter such Orders as necessary or appropriate to effectuate the terms of the Agreement.

Agreed to on behalf of plaintiffs Lequita Dennard, John Gulo, Terrance LaVela, Kathryn A. Sedlacek, Henry D. Schmoll, and Philip A. Kramer

Dated: 5/19/2016

By: _____
Gregory Y. Porter
Bailey & Glasser, LLP
1054 31st, NW
Suite 230
Washington, DC 20007
Telephone:    (202) 463-2101
Facsimile:    (202) 463-2103
Email:        gporter@baileyglasser.com

Agreed to on behalf of defendants Transamerica Corporation, Transamerica Financial Life Insurance Company, Transamerica Retirement Solutions LLC, Kirk Buese, Ralph Arnold, Ken Klinger, Mary Taiber, and Diane Meiners

Dated: 5/19/2011

By: _____
Brian D. Boyle
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, D.C. 20006
Telephone:    (202) 383 5300
Facsimile:    (202) 383-5414
Email:        bboyle@omm.com

31

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| LEQUITA DENNARD, JOHN GULO, TERRANCE LAVELA, KATHRYN A. SEDLACEK, HENRY D. SCHMOLL, and PHILIP A. KRAMER, | Case No. 1:15-cv-00030-EJM |
| Plaintiffs, | Judge: Hon. Edward J. McManus<br>Magistrate: Hon. Jon S. Scoles |
| v. | |
| TRANSAMERICA CORPORATION, TRANSAMERICA FINANCIAL LIFE INSURANCE COMPANY, TRANSAMERICA RETIREMENT SOLUTIONS CORPORATION, KIRK BUESE, RALPH ARNOLD, KEN KLINGER, MARY TAIBER, DIANE MEINERS, and DOES 1 through 10, inclusive, | |
| Defendants. | |

## JUDGMENT APPROVING SETTLEMENT OF CLASS ACTION

WHEREAS, Lequita Dennard, John Gulo, Terrance Lavela, Kathryn A. Sedlacek, Henry

D. Schmoll and Philip A. Kramer (the "Plaintiffs") in the above-captioned lawsuit (the "Action")

on behalf of themselves and the Settlement Classes, and Defendants Transamerica Corporation,

Transamerica Financial Life Insurance Company, Transamerica Retirement Solutions

Corporation, Kirk Buese, Ralph Arnold,  Ken Klinger, Mary Taiber, Diane Meiners, and Does 1

through 10 (the "Defendants"), have entered into a Class Action Settlement Agreement dated

_____, May 19, 2016, (the "Settlement Agreement"), that

provides for a complete dismissal with prejudice of all claims asserted in the Action against

Defendants by Settlement Class Members on the terms and conditions set forth in the Settlement

Agreement, subject to the approval of this Court (the "Settlement");

WHEREAS, unless otherwise defined in this Judgment, the capitalized terms herein shall have the same meaning as they have in the Agreement;

WHEREAS, by Order dated _____ (the "Preliminary Approval Order"), this Court (1) conditionally certified the Settlement Classes and appointed Class Counsel; (2) preliminarily approved the Settlement; (3) directed notice to Monetary Relief Class Members and approved the plan and form of Notice; (4) appointed a Settlement Administrator; (5) scheduled a Fairness Hearing; and (6) scheduled a hearing on Plaintiffs' counsels' motion for fees and costs and the payment of Case Contribution Awards;

WHEREAS, due and adequate notice has been given to the Settlement Classes;

WHEREAS, the Court conducted a hearing on _____ (the "Fairness Hearing") to consider, among other things, (a) whether the proposed Settlement on the terms and conditions provided for in the Settlement Agreement are fair, reasonable, adequate and in the best interests of the Settlement Classes and should be approved by the Court; (b) whether a Judgment substantially in the form attached as Exhibit A to the Agreement should be entered dismissing with prejudice all claims asserted in the Action against Defendants with respect to Settlement Class Members; (c) whether the proposed Plan of Allocation for the proceeds of the Settlement is fair and reasonable and should be approved; (d) whether the motion by Plaintiffs' Counsel for an award of attorneys' fees and reimbursement of litigation expenses and for Case Contribution Awards should be approved; and

WHEREAS, the Court having reviewed and considered the Settlement Agreement, all papers filed and proceedings held herein in connection with the Settlement, all oral and written comments received regarding the proposed Settlement, and the record in the Action, and good cause appearing therefor;

2

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.    **Jurisdiction:**  The Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties and each of the Settlement Class Members.

2.    **Incorporation of Settlement Documents:**  This Judgment incorporates and makes a part hereof: (a) the Settlement Agreement filed with the Court on _____, May 20, 2016, including the Plan of Allocation submitted therewith; and (b) the Amended Notice submitted to the Court after the _____ hearing on preliminary approval and approved by the Court on _____.

3.    **Class Certification for Settlement Purposes:**  The Court hereby affirms its determinations in the Preliminary Approval Order certifying, for the purposes of the Settlement only, the Action as a class action pursuant to Rules 23(a) and (b)(1) of the Federal Rules of Civil Procedure with the (1) Monetary Relief Class consisting of all current and former participants in the Plan who maintained a balance of any amount in the Plan at any point during the period from February 6, 2009 to the date of entry of the Preliminary Approval Order; and (2) the Structural Changes Class consisting of all participants in the Plan on or after the date of entry of the Preliminary Approval Order.

4.    **Adequacy of Representation:**  Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of Settlement only, the Court hereby affirms its determinations in the Preliminary Approval Order certifying Plaintiffs as Class Representatives for the Settlement Classes and appointing Plaintiffs' Counsel as Class Counsel for the Settlement Classes both in terms of litigating the claims of the Settlement Classes and for purposes of

entering into and implementing the Settlement and finding that the Settlement has satisfied the requirements of Federal Rules of Civil Procedure 23(a)(4) and 23(g).

5. **Notice:** The Court finds that the dissemination of the Notice:  (i) was implemented in accordance with the Preliminary Approval Order; (ii) constituted the best notice reasonably practicable under the circumstances; (iii) constituted notice that was reasonably calculated, under the circumstances, to apprise all Class Members of the pendency of the Action, of the effect of the Settlement (including the releases provided for therein), of Plaintiffs' Counsels' motion for an award of attorneys' fees and reimbursement of litigation expenses and case contribution awards, of their right to object to the Settlement, the Plan of Allocation and Plaintiffs' Counsels' motion for attorneys' fee and reimbursement of litigation expenses, and of their right to appear at the Fairness Hearing; (iv) constituted due, adequate, and sufficient notice to all persons or entities entitled to receive notice of the proposed Settlement; and (v) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution including the Due Process Clause, and all other applicable law and rules.

6. **Final Settlement Approval and Dismissal of Claims:** Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement set forth in the Agreement in all respects including, without limitation, the amount of the Settlement; the releases provided for therein, including the release of the Plaintiffs' Claims as against the Defendants and the Defendants' Claims as against the Plaintiffs; and other dismissal with prejudice of the claims asserted in the Action against Defendants by Settlement Class Members, and finds that the Settlement is, in all respects, fair, reasonable and adequate, and is in the best interests of Plaintiffs and the Settlement Classes.  The

4

Parties are directed to implement, perform and consummate the Settlement in accordance with the terms and provisions of the Agreement.

7.    As of the Effective Date, pursuant to Fed. R. Civ. P. 54(b), all of the claims asserted in this Action against Defendants by Plaintiffs and Settlement Class Members are hereby dismissed with prejudice. The Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Settlement Agreement.

8.    **Binding Effect:**  The terms of the Settlement Agreement and of this Judgment shall be forever binding on Defendants, Plaintiffs and all Settlement Class Members, as well as their respective heirs, executors, administrators, predecessors, successors and assigns.

9.    **Releases:**  The releases set forth in Paragraphs 6.1 and 6.3 of the Settlement Agreement (the "Releases"), together with the definitions contained in Paragraphs 1.13, 1.35 and 1.48 of the Settlement Agreement relating thereto, are expressly incorporated herein in all respects. The Releases are effective as of the Effective Date. Accordingly, the Court orders that, as of the Effective Date:

a)    The Plaintiffs and each of the other Settlement Class Members, on behalf of themselves and their respective officers, directors, heirs, executors, administrators, predecessors, successors, affiliates and assigns, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived, discharged, and dismissed with prejudice each and every Claim against the Defendants and the other Defendant Released Parties and shall forever be enjoined from prosecuting any or all of the Plaintiffs' Claims against any of the Defendant Released Parties as more fully set forth in the Settlement Agreement; and

5

b)  Each of the Defendants, on behalf of themselves and their respective officers, directors, heirs, executors, administrators, predecessors, successors, affiliates and assigns, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived, discharged and dismissed with prejudice each and every Defendants' Claim against Plaintiffs and shall forever be enjoined from prosecuting any or all of the Defendants' Claims against the Plaintiffs, as more fully set forth in the Settlement Agreement.

10.  **Rule 11 Findings:**  The Court finds and concludes that the Parties and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the commencement, maintenance, prosecution, defense and settlement of the claims asserted in the Action against Defendants by Settlement Class Members.

11.  **No Admissions:**  This Judgment, the Preliminary Approval Order, the Settlement Agreement (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), materials submitted in support of the Plan of Allocation, and the negotiations that led to the agreement in principle reached on January 23, 2016, the negotiation of the Settlement Agreement and its exhibits, and any papers submitted in support of approval of the Settlement, and any proceedings taken pursuant to or in connection with the Settlement Agreement or approval of the Settlement (including any arguments proffered in connection therewith): (a) shall not be offered against any of the Defendants as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that was, could have been, or may be

6

asserted or the deficiency of any defense that has been, could have been, or may be asserted in this Action or in any litigation, or of any liability, negligence, fault, or other wrongdoing of any kind by any of the Defendants; (b) shall not be offered against Plaintiffs as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing of any kid, or in any way referred to for any other reason as against Plaintiffs in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Settlement Agreement; provided, however, that if the Settlement Agreement is approved by the Court, the Parties and their respective counsel may refer to it to effectuate the protections from liability granted thereunder or otherwise to enforce the terms of the Settlement; (c) shall not be construed against any of the Parties as an admission, concession, or presumption that the Settlement Amount represents the amount which could be or would have been recovered by the Settlement Class after trial with respect to their claims in the Action; (d) shall not be construed against the Plaintiffs or any other plaintiff party that any of the claims asserted or to be asserted in the Action are without merit, that any of the Defendants have or had meritorious defenses, or that damages recoverable by the Settlement Classes would not have exceeded the Settlement Amount.

12. **Retention of Jurisdiction:** Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over: (a) the Parties for purposes of the administration, interpretation, implementation and enforcement of the Settlement; (b) the disposition of the Settlement Fund; (c) any motion for an award of attorneys' fees and litigation expenses by Plaintiffs' Counsel in the Action that will be paid from the Settlement Fund; (d) any motion to approve the Plan of Allocation; and (e) the Settlement Class Members for all matters relating to the Action.

13.     A separate order shall be entered on the motion of Plaintiffs' Counsel for an award of attorneys' fees and reimbursement of litigation expenses and Case Contribution Fees. Such order shall in no way affect or delay the finality of this Judgment and shall not affect or delay the Effective Date of the Settlement.

14.     **Modification of Settlement Agreement:**  Without further approval from the Court, Plaintiffs and Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Settlement Agreement or any exhibits attached thereto to effectuate this Settlement that: (i) are not materially inconsistent with this Judgment; and (ii) do not materially limit the rights of Settlement Class Members in connection with the Settlement.  Without further order of the Court, Plaintiffs and Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

15.     **Termination:**  If the Effective Date does not occur or the Settlement is terminated as provided in the Settlement Agreement, then this Judgment (and any orders of the Court relating to the Settlement) shall be vacated, rendered null and void and be of no further force or effect, except as otherwise provided by the Settlement Agreement.

16.     **Entry of Final Judgment:**  There is no just reason to delay entry of this Judgment as a final judgment with respect to the claims asserted in the Action against Defendants by Settlement Class Members.  Accordingly, the Clerk of the Court is expressly directed to immediately enter this final judgment pursuant to Fed. R. Civ. P. 54(b) as against Defendants.

**SO ORDERED** this _____ day of _____, 2016.


_____
The Honorable Edward J. McManus

8

EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | |
|---|---|
| LEQUITA DENNARD, JOHN GULO, TERRANCE LAVELA, KATHRYN A. SEDLACEK, HENRY D. SCHMOLL, and PHILIP A. KRAMER, <br><br> Plaintiffs, <br><br> v. <br><br> TRANSAMERICA CORPORATION, TRANSAMERICA FINANCIAL LIFE INSURANCE COMPANY, TRANSAMERICA RETIREMENT SOLUTIONS CORPORATION, KIRK BUESE, RALPH ARNOLD, KEN KLINGER, MARY TAIBER, DIANE MEINERS, and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.  1:15-cv-00030-EJM <br><br> **NOTICE OF PROPOSED CLASS ACTION SETTLEMENT** <br><br><br> Judge:        Hon. Edward J. McManus <br> Magistrate:  Hon. Jon S. Scoles |

*A federal court has authorized this Notice.  This is **not** a solicitation from a lawyer.*

**PLEASE READ THIS NOTICE CAREFULLY AS IT MAY AFFECT YOUR RIGHTS.**

You are receiving this notice because the records maintained by Transamerica Corporation ("Transamerica"), Transamerica Financial Life Insurance Company ("TFLIC"), and Transamerica Retirement Solutions Corporation ("TRSC") (collectively "Defendants"), which are the Defendants in the above-captioned federal lawsuit, indicate that you are or have been a participant in the Transamerica 401(k) Retirement Savings Plan, formerly known as the Aegon Companies Profit Sharing Plan (the "Plan"), at some time during the period from February 6, 2009 through [date of Preliminary Approval Order].  As such, your rights may be affected by a proposed class action settlement (the "Settlement") of this lawsuit.  **Please read the following information carefully to find out what the lawsuit is about, what the terms of the proposed**

QUESTIONS?  CALL 1-800-___-____ TOLL FREE OR VISIT WWW._____.

**Do not call the Court or Transamerica**

**They cannot answer your questions.**

**settlement are, what rights you have to object to the proposed settlement agreement if you disagree with its terms, and what deadlines apply to the right to object to the proposed settlement.**

### WHAT THIS LAWSUIT IS ABOUT

A lawsuit was filed in the United States District Court for the Northern District of Iowa against Defendants. The lawsuit involves claims that Defendants violated the federal Employee Retirement Income Security Act of 1974 ("ERISA"), by failing to comply with their responsibilities under ERISA to the Plan and participants of the Plan in the management of the Plan. The Plan participants who filed the lawsuit ("Plaintiffs") claim that the trustees of the Plan acted improperly by selecting and maintaining Transamerica-affiliated investment options in the Plan and by causing participants to pay excessive fees for the Plan's administrative services.

Defendants deny the allegations in the case and assert that their conduct was entirely proper. Defendants have asserted, and would assert should the litigation continue, a number of defenses to Plaintiffs' claims. For example, Defendants contend that the Plan Sponsor bore the Plan's administrative fees, and thus that there is no question that the administrative fees of the Plan were reasonable. Defendants also maintain that the practice of offering Transamerica's own products as investment options for the Plan is not only exceedingly common, but also specifically authorized by statutory and regulatory exemptions allowing financial services companies to offer employees the opportunity to invest in investment products the companies make available to others. Defendants maintain that they did not engage in prohibited transactions, nor did they breach their fiduciary duties to the Plan under ERISA.

### The Terms of the Settlement

To avoid the time and expense of a lawsuit, Plaintiffs and Defendants have agreed to a settlement that involves both monetary payments to Plan participants and changes in the investment options and fees of the Plan. These and other terms of the Settlement are set forth in the Class Action Settlement Agreement dated May 19, 2016 ("Settlement Agreement"), and described below.

    1.    The Scope of the Classes Covered by the Settlement. The Settlement Agreement proposes a class action settlement that would cover and be binding on the following classes of individuals ("Settlement Class" or "Settlement Class Members"):

**QUESTIONS? CALL 1-800-___-____ TOLL FREE OR VISIT WWW._____.**

**Do not call the Court or Transamerica**

**They cannot answer your questions.**

(a) **The Monetary Relief Class**: The "Monetary Relief Class" will consist of all current and former participants in the Plan who maintained a balance of any amount in the Plan at any point during the period February 6, 2009 to the date of entry of the Preliminary Approval Order, other than the Defendants.

(b) **The Structural Changes Class**: The "Structural Changes Class" will consist of all participants in the Plan on or after the date of entry of the Preliminary Approval Order.

Whether a person meets these definitions or not will be based on the Plan's records. You have received this Notice because, based upon those records, you are believed to be a member of the Settlement Class.

2.  <u>The Payment and Allocation of a Settlement Fund</u>. As part of the Settlement, Transamerica has agreed to make a payment of $3.8 million (the "Settlement Fund") for the benefit of the Monetary Relief Class. This sum, after the deduction of reasonable amounts to be approved by the Court for a Case Contribution Award to Plaintiffs, Attorneys' Fees and Expenses, Independent Fiduciary Fees and Costs, Administration Costs, and Taxes and Tax-Related Costs, will be distributed to Monetary Relief Class Members on a pro rata basis, based on their average account balances during the period of February 6, 2009 through March 31, 2016, except that no distribution will be smaller than $10 and any Monetary Relief Class Member with a pro rata amount of less than $10 shall receive a distribution of $10. The Plan of Allocation is attached to this Notice as Appendix A. Monetary Relief Class Members who have a positive account balance in their Plan account at the time of the distribution will receive settlement proceeds into their Plan account. Monetary Relief Class Members who no longer have a positive balance in their Plan account as of the date of distribution will receive a check from the Settlement Administrator.

In addition, Defendants may select an independent fiduciary to provide such authorization as may be required by Prohibited Transaction Exemption 2003-39. All costs reasonably borne by the independent fiduciary, including the reasonable fees of the independent fiduciary for its service (not exceeding $40,000), shall be borne by the Settlement Fund.

3.  <u>Non-Monetary Relief:</u> In addition to the monetary payment, Defendants will be implementing the following changes to the Plan, subject to any changes in applicable law (the "Structural Changes"):

---

QUESTIONS? CALL 1-800-___-____ TOLL FREE OR VISIT WWW._____.

**Do not call the Court or Transamerica**

**They cannot answer your questions.**

(1) For the shorter of a period lasting three years from the date of the Court's entry of the Preliminary Approval Order (the "Compliance Period"), or as long as the Plan invests in any of the TFLIC Pooled Separate Accounts that invest in Transamerica Asset Management-advised Registered Investment Companies, the Plan's separate account fee for each of the TFLIC Pooled Separate Accounts (inclusive of fees collected from the TFLIC Pooled Separate Accounts and fees and expenses charged in connection with the management of the underlying TAM-advised Registered Investment Companies) shall not exceed those in effect as of December 31, 2015.

(2) For the duration of the Compliance Period, the Plan's trustees will add a third-party, low-fee bond index mutual fund to the Plan's investment lineup, with fees not to exceed seven (7) basis points per annum. Also for the duration of the Compliance Period, the Plan's trustees will maintain an S&P 500 index mutual fund option with an expense ratio not to exceed two (2) basis points per annum. The provisions in this paragraph are subject to the availability of suitable such products in the market.

(3) For the duration of the Compliance Period, the Plan will continue to retain the services of an unaffiliated investment consultant to provide an annual evaluation of the Plan's investment lineup and brokerage window arrangements.

(4) The Plan's trustees shall revise the Summary Plan Description to delineate the investment structures of the Plan and to detail the funds used in the Portfolio Express Qualified Default Investment Alternative.

(5) For the duration of the Compliance Period, Transamerica will continue to rebate all mutual fund revenue sharing to the Plan as a plan service credit.

(6) For the duration of the Compliance Period, Transamerica will continue to rebate any sub-advisor fees for affiliated sub-advisors to the Plan as a plan service credit.

(7) For the duration of the Compliance Period, Transamerica will continue to provide recordkeeping services to the Plan at no cost.

(8) For the duration of the Compliance Period, Transamerica will continue to offer participants access to a wide range of non-affiliated mutual fund investments through a brokerage window.

QUESTIONS? CALL 1-800-___-____ TOLL FREE OR VISIT WWW._____.

Do not call the Court or Transamerica

They cannot answer your questions.

(9) Defendants shall complete implementation of the Structural Changes within ninety (90) days of the Effective Date, or by March 31, 2017, whichever is later. Defendants shall file a notice with the Court within thirty (30) days of implementing the Structural Changes attesting that they have implemented the Structural Changes.

4.      The Classwide Release of Claims and Covenant Not to Sue.  In exchange for payment of the Settlement Fund by Transamerica and the changes in the Plan's operations as required by the Settlement Agreement, all Settlement Class Members will release any claims they have related to these lawsuits and be prohibited from bringing or pursuing any other lawsuits or other actions based on such claims.  The Settlement Class Members further covenant not to sue Defendants on any claims based on conduct that the Settlement Agreement requires Defendants to undertake (the "Covenant Not to Sue").  This Covenant Not to Sue expires on [Month, Day], 2019, which is three years from the date of entry of the Preliminary Approval Order.  The Releases and the Covenant Not to Sue are set forth in full in the Settlement Agreement, which can be viewed online at [website], or requested from Class Counsel.

## The Settlement Approval Process

The Court has granted preliminary approval of the proposed Settlement, finding that it is sufficiently within the range of reasonableness to warrant such preliminary approval, and has approved this notice to the Settlement Classes.  The Settlement will not take effect, however, until it receives final approval from the Court following an opportunity for Settlement Class Members to object to the Settlement, as described in detail below. Following the deadline for objecting to the Settlement, the Court will hold a Final Approval Hearing on _____, 2016, which will take place at the United States District Court for the Northern District of Iowa, located at 111 Seventh Avenue, SE, Cedar Rapids, Iowa 52401-2101. The date and location of the Final Approval Hearing is subject to change by order of the Court, which will appear on the Court's docket for these cases.

## The Opportunity to Object to the Settlement

Prior to the Final Approval Hearing, Settlement Class Members will have the opportunity to object to approval of the Settlement. Settlement Class Members can object to the Settlement and give reasons why they think the Court should not approve it.  ***This settlement proposes mandatory classes for which members of the Structural Relief and Monetary Relief classes***

QUESTIONS?  CALL 1-800-___-____ TOLL FREE OR VISIT WWW._____.

**Do not call the Court or Transamerica**

**They cannot answer your questions.**

*will not be afforded the opportunity to exclude themselves from the settlement and preserve their claims.*

To object, you must send your objection to the Court, at the United States District Court for the Northern District of Iowa, located at 111 Seventh Avenue, SE, Cedar Rapids, Iowa 52401-2101, and to the Parties at the following addresses:

For Filing with the Court:
           United States District Court
           Northern District of Iowa
           111 Seventh Avenue, SE
           Cedar Rapids, Iowa 52401-2101
           Re: *Dennard, et al. v. Transamerica Corporation, et al.* (Case No. 1:15-cv-00030-EJM)

To Class Counsel:

| | |
|---|---|
| Gregory Y. Porter | Todd S. Schneider |
| Bailey & Glasser LLP | Schneider Wallace Cottrell Konecky |
| 1054 31st Street, NW | Wotkyns LLP |
| Suite 230 | 2000 Powell Street, Suite 1400 |
| Washington, D.C. 20007 | Emeryville, California 94608 |

To Defendants' Counsel:
           Brian D. Boyle
           O'Melveny & Myers LLP
           1625 Eye Street, NW
           Washington, D.C. 20006

Objections must be filed with the Court Clerk on or before _____, 2016. Objections filed after that date will not be considered. Any Settlement Class Member failing to submit a timely objection will be deemed to have waived any objection they might have, and any untimely objection will be barred absent an order from the Court. Objections must include: (1) the case name and number; (2) your full name, current address, telephone number and signature; (3) a statement that you are a Settlement Class Member and an explanation of the basis upon which you claim to be a Settlement Class Member; (4) all grounds for the objection, accompanied by

QUESTIONS? CALL 1-800-___-____ TOLL FREE OR VISIT WWW._____.

**Do not call the Court or Transamerica**

**They cannot answer your questions.**

any legal support known to you or your counsel; (5) a statement as to whether you or your counsel intends to personally appear and/or testify at the Final Approval Hearing; and (6) a list of any persons you or your counsel may call to testify at the Final Approval Hearing in support of your objection.

Anyone who files and serves a timely written objection in accordance with the instructions above may also appear at the Final Approval Hearing either in person or through qualified counsel retained at his or her own expense. Those persons or their attorneys intending to appear at the Final Approval Hearing must effect service of a notice of intention to appear on Class Counsel and Defendants' counsel (at the addresses set out above) and file it with the Court Clerk by no later than _____, 2016 setting forth: (1) the name, address, and telephone number of the Settlement Class Member; and (2) if applicable, the name, address, and telephone number of that Settlement Class Member's attorney. Anyone who does not timely file and serve a notice of intention to appear in accordance with this paragraph shall not be permitted to appear at the Final Approval Hearing, except by Order of the Court for good cause shown. Any comment or objection that is timely filed will be considered by the Court even in the absence of a personal appearance by the Settlement Class Member or that Settlement Class Member's counsel.

The Court will consider Settlement Class Member objections in deciding whether to grant final approval. Objectors are not required to attend the Final Approval Hearing, but if you intend to appear you must state your intention to do so in the manner described above. Settlement Class Members who do not comply with these procedures, or who miss the deadline to file an objection, lose the opportunity to have their objection considered by the Court or to appeal from any order or judgment entered by the Court regarding the Settlement.

### ATTORNEY'S FEES AND CASE CONTRIBUTION AWARDS FOR NAMED PLAINTIFFS

In granting preliminary approval of the proposed Settlement, the Court appointed the Plaintiffs' lawyers to serve as "Class Counsel" for the Settlement Class. The attorneys for the Settlement Class are as follows:

Gregory Y. Porter                           Todd S. Schneider
BAILEY & GLASSER LLP                        SCHNEIDER WALLACE COTTRELL
1054 31st, NW                               BRAYTON KONECKY, LLP
Suite 230                                   2000 Powell Street, Suite 1400
Washington, DC 20007                        Emeryville, California 94608

---

**QUESTIONS? CALL 1-800-___-____ TOLL FREE OR VISIT WWW._____.**

**Do not call the Court or Transamerica**

**They cannot answer your questions.**

**Exhibit B**

Class Counsel will file a motion with the Court seeking approval of payment from the Settlement Fund of the expenses they incurred in prosecuting the case, reasonable attorneys' fees and a Case Contribution Award not to exceed $6,000 for each named Plaintiff. Class Counsel intend to submit an application for attorneys' fees not to exceed one-third of the Settlement Fund, plus costs. The motion and supporting papers will be filed on or before _____ 2016. After that date you may review the motion and supporting papers at [website]. Any attorneys' fees, expenses and Case Contribution Awards approved by the Court, in addition to the fees and costs for the independent fiduciary and the expenses incurred by the Settlement Administrator in sending this Notice and administering the Settlement, will be paid from the Settlement Fund.

GETTING MORE INFORMATION

You can visit the website at [website], where you will find the full Settlement Agreement, the Court's order granting Preliminary Approval of the Settlement, this Notice, and other relevant pleadings and documents. If you cannot find the information you need on the website, you may also contact Class Counsel for more information. Do not contact the Court or Transamerica to get additional information.

**Remember, please do not contact the Court or Transamerica. They may not be able to give you additional information.**

Dated: _____, 2016                    By Order of the United States District Court

                                                        District Judge

QUESTIONS? CALL 1-800-___-____ TOLL FREE OR VISIT WWW._____.

**Do not call the Court or Transamerica**

**They cannot answer your questions.**

Case 1:15-cv-00030-EJM-JSS   Document 86-1   Filed 05/20/16   Page 80 of 94

EXHIBIT C

Exhibit C

## Plan of Allocation

The amounts due to each Monetary Relief Class Member shall be calculated by the Settlement Administrator as follows:

1.      The Settlement Administrator shall obtain from Defendants the year-end account balance in the Plan for every Monetary Relief Class Member for the plan years 2009 through 2016 (the "Plan Years"). For the year 2016, the year-end account balance shall be the account balance as of March 31, 2016. The Settlement Administrator shall also obtain, in writing, an agreement between the parties as to the amount of the Distributable Settlement Amount.

2.      The Settlement Administrator shall sum all of the year-end account balances for each Monetary Relief Class Member, and for any Monetary Relief Class Member with a positive sum, shall divide the sum of that class member's year-end balances by the sum of all the Monetary Relief Class members' year-end balances for the Plan Years, with the quotient representing the Entitlement Percentage for each such Monetary Relief Class Member.

*Sum of Year-End Account Balances For Each Monetary Relief Class Member (positive only) / Sum of Year-End Account Balances for all Monetary Relief Class Members = Entitlement Percentage*

3.      The Settlement Administrator shall next multiply the Entitlement Percentage by the Distributable Settlement Amount, with the product representing the Entitlement Amount.

*Entitlement Percentage x Distributable Settlement Amount = Entitlement Amount*

4.      Any Monetary Relief Class member whose Entitlement Amount is less than ten dollars ($10.00) shall receive a payment of ten dollars ($10.00) (the "Minimum Distribution"), with the Entitlement Amount of the remaining Monetary Relief Class members adjusted proportionally to assure that all Monetary Relief Class members receive a payment of at least the Minimum Distribution.

1

EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| LEQUITA DENNARD, JOHN GULO, TERRANCE LAVELA, KATHRYN A. SEDLACEK, HENRY D. SCHMOLL, and PHILIP A. KRAMER, | Case No. 1:15-cv-00030-EJM |
| Plaintiffs, | Judge: Hon. Edward J. McManus |
| v. | Magistrate: Hon. Jon S. Scoles |
| AEGON USA LLC, TRANSAMERICA FINANCIAL LIFE INSURANCE COMPANY, TRANSAMERICA RETIREMENT SOLUTIONS CORPORATION, KIRK BUESE, RALPH ARNOLD, KEN KLINGER, MARY TAIBER, DIANE MEINERS, and DOES 1 through 10, inclusive, | |
| Defendants. | |

## PRELIMINARY APPROVAL ORDER

**(1) CONDITIONALLY CERTIFYING THE SETTLEMENT CLASSES AND APPOINTING CLASS COUNSEL;**

**(2) GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT;**

**(3) ENJOINING SETTLEMENT CLASS MEMBERS FROM PURSUING ANY CLAIMS THAT ARISE OUT OF OR RELATE IN ANY WAY TO THE CLAIMS AT ISSUE IN THIS ACTION PENDING FINAL APPROVAL OF THE SETTLEMENT;**

**(4) DIRECTING NOTICE TO MONETARY RELIEF CLASS MEMBERS AND APPROVING THE PLAN AND FORM OF NOTICE;**

**(5) APPOINTING A SETTLEMENT ADMINISTRATOR;**

**(6) SCHEDULING A FAIRNESS HEARING; AND**

**(7) SCHEDULING A HEARING ON CLASS COUNSEL'S MOTION FOR FEES AND COSTS AND THE PAYMENT OF SERVICE AWARDS TO THE NAMED PLAINTIFFS**

The Court having received and considered Plaintiffs' Unopposed Motion for an Order

(the "Motion") in the above-captioned action (the "Action") and supporting papers including the

Class Action Settlement Agreement dated May 19, 2016 (the "Settlement Agreement") and the declarations of counsel, having further considered the arguments of counsel and the pleadings and record in this case, and having held a hearing on the motion on _____, and finding good cause for granting the Motion,

**IT IS HEREBY ORDERED AS FOLLOWS:**

1.      Capitalized terms used in this Order that are not otherwise identified herein have the meaning assigned to them in the Settlement Agreement.

2.      This Court has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

3.      Venue before the Court is proper pursuant to 29 U.S.C. § 1132(e)(2).

4.      The terms set forth in the Settlement Agreement are hereby preliminarily approved, subject to further consideration at the Fairness Hearing provided for below. The Court concludes that the Settlement Agreement is sufficiently within the range of reasonableness to warrant the preliminary approval of the Settlement Agreement, the scheduling of the Fairness Hearing, and the mailing of notices to Monetary Relief Class Members, each as provided for in this Order. The Court further finds that the formula proposed by Plaintiffs and Class Counsel for allocating the Distributable Settlement Fund among Monetary Relief Class Members is fair and reasonable.

5.      The Court approves the retention by Class Counsel of KCC Class Action Services, LLC as the Settlement Administrator.

6.      In further aid of the Court's jurisdiction to review, consider, implement, and enforce the settlement, the Court orders that Plaintiffs and all Settlement Class Members are preliminarily enjoined and barred from commencing, prosecuting, or otherwise litigating, in

2

whole or in part, either directly, representatively, derivatively, or in any other capacity, whether by complaint, counterclaim, defense, or otherwise, in any local, state, or federal court, or in any agency or other authority or forum wherever located, any contention, allegation, claim, cause of action, matter, lawsuit, or action (including but not limited to actions pending as of the date of this Order), that arises out of or relates in any way to the Released Claims.

7.      The Court approves the Notice of Proposed Class Action Settlement ("Notice") in substantially the form attached as Exhibit B to the Settlement Agreement.

### Class Certification for Settlement Purposes

8.      Pursuant to Rules 23(a)(b)(1), and (b)(2) of the Federal Rules of Civil Procedure, the Court certifies, solely for the purposes of effectuating the proposed Settlement non-opt-out, (1) Structural Changes Class under Rule 23(b)(2) consisting of all participants on or after the date of entry of the Preliminary Approval Order; and (2) Monetary Relief Class under Rule 23(b)(1) consisting of all current and former participants in the Employees Plan or the Individual Field Plan who maintained a balance of any amount in either of the Plans at any point during the period February 6, 2009 to the date of entry to the Preliminary Approval Order.

9.      Solely for purposes of the proposed Settlement of these Actions, the Court finds that each element required for certification of the Settlement Classes pursuant to Rule 23(a) of the Federal Rules of Civil Procedure has been met:  (a) the members of the Settlement Classes are so numerous that their joinder in the Actions would be impracticable; (b) there are questions of law and fact common to the Settlement Classes; (c) the claims of Named Plaintiffs are typical of the claims of the Settlement Classes; (d) Named Plaintiffs and Named Plaintiffs' Counsel have fairly and adequately represented and protected the interests of the Settlement Classes.  With respect to the Monetary Relief Class, the Court finds that the requirements of Rule 23(b)(1)(A)

and 23(b)(1)(B) have been met. Prosecution of separate actions by individual members of the Monetary Relief Class would create a risk of inconsistent or varying adjudications as to individual Monetary Relief Class Members that would establish incompatible standards of conduct for the parties opposing the claims asserted in these Actions. Monetary relief ordered as a result of any one action by an individual class member would alter the Plan for all class members, impairing or impeding those other members' ability to prosecute their interests. With respect to the Structural Changes Class, the Court finds that the requirements of Rule 23(b)(2) have been met for purposes of settlement: Defendants have acted on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

10. The Court hereby finds and concludes that pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, Plaintiffs are adequate class representatives and certify them as Class Representatives for the Settlement Classes. The Court also appoints Plaintiffs' Counsel as Class Counsel for the Settlement Classes.

**Manner of Giving Notice**

11. Not later than fourteen (14) days after entry of this Order, Defendants shall provide the Settlement Administrator with the names and last known addresses and email addresses (if available) of the Settlement Class Members. The names and addresses provided to the Settlement Administrator pursuant to this Order shall be used solely for the purpose of providing notice of this Settlement and for no other purpose.

12. Not later than thirty (30) days after entry of this Order, the Settlement Administrator shall cause copies of the Notice to be sent by first-class mail, postage pre-paid, or by email (if available) to all Settlement Class Members through the notice procedure described in the Settlement Agreement.

4

13.　Not later than five (5) days after sending the Notice to Settlement Class Members, the Settlement Administrator shall provide to Class Counsel and to Defendants' Counsel a declaration attesting to compliance with the sending of the Settlement Notices, as set forth above.

14.　The Court finds that the notice to be provided as set forth in this Order is the best means of providing notice to the Settlement Class Members as is practicable under the circumstances and, when completed, shall constitute due and sufficient notice of the Settlement and the Fairness Hearing to all persons affected by or entitled to participate in the Settlement, the hearing on the motion for fees, or the Fairness Hearing, in full compliance with the requirements of due process and the Federal Rules of Civil Procedure.

15.　All reasonable costs incurred by Plaintiffs' Counsel or the Settlement Administrator for providing the Notice as well as for administering the Settlement shall be paid as set forth in the Settlement Agreement without further order of the Court.

**Fairness Hearing**

16.　The Court will hold a settlement hearing (the "Fairness Hearing") on _____ in Courtroom _____ of the United States District Court for the Northern District of Iowa, located at 111 Seventh Avenue, SE, Cedar Rapids, Iowa 52401-2101, for the following purposes:　(a) to determine whether the proposed Settlement on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, adequate and in the best interests of the Settlement Classes and should be approved by the Court; (b) to determine whether a Judgment substantially in the form attached as Exhibit A to the Settlement Agreement should be entered dismissing with prejudice all claims asserted in the Action against Defendants with respect to Settlement Class Members; (c) to determine whether the proposed Plan of Allocation (attached as Exhibit C to the Settlement Agreement) for the net proceeds of the

5

Settlement is fair and reasonable and should be approved; (d) to determine whether the motion by Plaintiffs' Counsel for an award of attorneys' fees and reimbursement of litigation expenses should be approved; and (e) to consider any other matters that may properly be brought before the Court in connection with the Settlement. Notice of the Settlement and the Fairness Hearing shall be given to Settlement Class Members as set forth in Paragraph 12 of this Order.

17. The Court may adjourn the Fairness Hearing and approve the proposed Settlement with such modification as the Parties may agree to, if appropriate, without further notice to the Settlement Class.

18. Not later than 30 days before the Fairness Hearing, Class Counsel shall submit their papers in support of final approval of the Settlement Agreement, Class Counsels' applications for attorneys' fees, expenses and service payments.

## Objections to the Settlement

19. The Court will consider written comments and objections to the Settlement Agreement, to the proposed award of attorneys' fees and expenses, or to the request for a Case Contribution Award for the Plaintiffs only if such written comments or objections are filed with the Court Clerk not later than 15 days before the Fairness Hearing and comply with the requirements of Paragraph 20 below, and are served on the Parties at the following addresses:

For Filing with the Court:

United States District Court
Northern District of Iowa
Cedar Rapids Division
111 Seventh Avenue, SE
Cedar Rapids, IA 52401-2101
Re: *Dennard, et al. v. Aegon USA LLC, et al.*
(Case No.: 1:15-cv-00030-EJM)

To Class Counsel:

6

Gregory Y. Porter
Bailey & Glasser, LLP
910 17th Street, NW, Suite 800
Washington, DC 20006

To Defendants' Counsel:

Brian D. Boyle
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006

20.     The Court will only consider written comments and objections to the Settlement that are signed by the Settlement Class Member and are timely filed with the Court and include all of the following:  (a) the name and case number of the Action; (b) the Settlement Class Member's full name, address, telephone number, and signature; (c) a statement that the person submitting the comments or objections is a Settlement Class Member and an explanation of the basis upon which the person claims to be a Settlement Class Member; (d) all grounds for the objection, accompanied by any legal support known to the objector or his or her counsel; (e) a statement as to whether the Settlement Class Member or his or her counsel intends to personally appear and/or testify at the Fairness Hearing; and (f) a list of any persons the objector or his or her counsel may call to testify at the Fairness Hearing in support of the objection.  Any member of either Settlement Class or other person who does not timely file and serve a written objection complying with the terms of this paragraph shall be deemed to have waived, and shall be foreclosed from raising, any objection to the Settlement Agreement, and any untimely objection shall be barred absent an order from the Court.  The Named Plaintiffs or Defendants may, bearing the cost, take discovery, including depositions, from anyone who files an objection with respect to any of the issues raised in the objection.

21.     Anyone who files and serves a timely, written comment or objection in accordance with this Order may also appear at the Fairness Hearing either in person or through

7

qualified counsel retained at their own expense. Those persons or their attorneys intending to appear at the Fairness Hearing must effect service of a notice of intention to appear setting forth, among other things, the name, address, and telephone number of the Settlement Class Member (and, if applicable, the name, address, and telephone number of that Settlement Class Member's attorney) on Class Counsel and Defendants' Counsel (at the addresses set out above) and file it with the Court Clerk by no later than 15 days before the Fairness Hearing. Anyone who does not timely file and serve a notice of intention to appear in accordance with this paragraph shall not be permitted to appear at the Fairness Hearing, except by Order of the Court for good cause shown. Any comment or objection that is timely filed will be considered by the Court even in the absence of a personal appearance by the Settlement Class Member or that Settlement Class Member's counsel.

22.     The Parties may file written responses to any objections not later than 7 days before the Fairness Hearing.

## Termination of Settlement

23.     This Order shall become null and void, ab initio, and shall be without prejudice to the rights of the Parties, all of whom shall be restored to their respective statuses as of January 21, 2016, prior to this Settlement Agreement, if the Settlement Agreement is terminated in accordance with the terms of the Settlement Agreement.

## Use of Order

24.     This Order is not admissible as evidence for any purpose against Defendants in any pending or future litigation involving any of the Parties. This Order (a) shall not give rise to any inference of, and shall not be construed or used as an admission, concession, or declaration against any Defendant of, wrongdoing or liability in the Actions or any other proceeding; (b) is

8

not an admission of any liability of any kind, whether legal or factual; (c) shall not be used or received in evidence in any action or proceeding for any purpose, except in an action or proceeding to enforce the Settlement Agreement; (d) shall not be construed or used as an admission, concession, or declaration by or against Plaintiffs or the Settlement Classes that their claims lack merit or that the relief requested in the Actions is inappropriate, improper or unavailable; (e) shall not be construed or used as an admission, concession, declaration or waiver by any party of any arguments, defenses, or claims he, she, or it may have, including, but not limited to, any objections by Defendants to class certification in the event that the Settlement Agreement is terminated. This Order and the Settlement Agreement and any proceedings taken pursuant to the Settlement Agreement are for settlement purposes only. Defendants specifically deny any fault, breach, liability or wrongdoing.

## **Jurisdiction**

25.     The Court hereby retains jurisdiction for purposes of implementing the Settlement Agreement, and reserves the power to enter additional orders to effectuate the fair and orderly administration and consummation of the Settlement Agreement as may from time to time be appropriate, and to resolve any and all disputes arising thereunder.


**SO ORDERED** this _____ day of _____, 2016.


_____
The Honorable Edward J. McManus

9

EXHIBIT E

**TFLIC Pooled Separate Account Fee Limits**

| Fund Name | Total Fee Limit |
|---|---|
| High Quality Bond | 0.40% |
| Core Bond | 0.40% |
| High Yield Bond | 0.50% |
| Large Value | 0.50% |
| Large Core | 0.65% |
| Large Growth | 0.65% |
| Mid Value | 0.70% |
| Small Core | 0.85% |
| International Equity | 0.80% |

1